SECRETARY, MARYLAND DEPARTMENT OF PER-
SONNEL ET AL. v. PAUL G. BENDER ET AL.

[No. 658, September Term, 1979.]

*Decided February 11, 1980.*

The cause was argued before MORTON, MOYLAN and LOWE, JJ.

*Scott Livingston, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William M. Huddles, Assistant Attorney General, James F. Truitt, Jr., Assistant Attorney General,* and *Robert B. Harrison, III, Assistant Attorney General,* on the brief, for appellants.

*James E. Carbine,* with whom were *J. Edward Davis* and *Weinberg & Green* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

Over five years ago appellees filed this suit under the Declaratory Judgment Act challenging the legality of more than 350 positions in the Department of Transportation. Under Maryland statutory law, Md. Code, Art. 64A, § 1, unless specifically excepted, all positions of government employment are deemed to be in the classified service, considered as the merit system, under which each position is given a classification. One of its purposes is to provide standards of employment and advancement through testing, etc., intending to avoid problems inherent in political spoils systems such as nepotism and related abuses. It follows that any position created within the State service which is not governed by the merit system is illegal, unless there can be found some statutory authority to create an exception justifying the position created.

The thrust of this case, brought by appellees in the Circuit Court for Baltimore City, was that the merit system statute had been illegally avoided by an improper interpretation of the Secretary of Transportation's statutory authority to create unclassified positions. In this appeal three statutory exceptions which interpretatively authorize creation of unclassified positions are involved. The "Staff Assistant Exception" in Md. Code, Trans. Art., § 2-102 (d);[1] the "Expert Training Exception" in Art. 64A, § 3[2] and the "Key Personnel Exception" in Trans. Art., § 6-204 (n).[3]

— standing to sue —

The two appellees in this case are classified employees of Maryland working in the Department of Transportation and are officers and members of the Maryland Classified

---

1.
   "*Appointment, removal, and salary of assistants, consultants, and other personnel.* — The Secretary may have in the Department the staff assistants, professional consultants, and employees provided in the State budget. Each staff assistant in charge of an area of responsibility and each professional consultant shall be appointed by and serves at the pleasure of the Secretary. Unless otherwise provided by law, the Secretary shall appoint and remove all other personnel in accordance with the provisions of the State Merit System Law. The Secretary may delegate his authority to appoint and remove personnel of any unit to the head of that unit."

2.
   "The following positions shall not be included in the classified service, namely: . . . all positions in State offices, boards, commissions, departments and institutions, which the Secretary may determine, with the approval of the Governor, require medical, engineering, scientific, educational or expert training and qualifications; . . . ."

3.
   "*Agents and employees.* — (1) Subject to paragraph (2) of this subsection, the Administration may employ:

   (i) Consulting engineers, accountants, construction and financial experts, superintendents, traveling representatives, managers, clerks, stenographers, and laborers; and

   (ii) Any other agents and employees that it considers necessary.

   (2) Except for those traveling representatives and other key personnel who the Administration determines require engineering, scientific, or expert training and qualifications, the employment, compensation, and tenure of all full-time employees are subject generally to the State Merit System Law. These full-time employees, including traveling representatives and other key personnel, are subject to the rights and benefits of Article 73B of the Code on pensions."

Employees Association. While it is apparent, and was implicitly admitted at oral argument, that the association is behind the suit, it was apparently necessary to sue in the names of the appellees in order to obtain the "citizen standing" necessary to obtain the desired declaratory judgment. Md. Code, Art. 64A, § 43 authorizes

> "[a]ny citizen of the State [to] maintain an action in any court of competent jurisdiction to recover, for the use of the State, any sums paid contrary to the provisions of this article or of the rules of the Secretary from the person or persons authorizing or making such payment to enjoin such person or persons from making such authorization, or to enjoin the Secretary from attaching his certificate to a payroll, if a certificate is provided for by rule, in violation of the provisions of this article."

They asked for a declaratory decree (under the Cts. & Jud. Proc. Art. of the Md. Code, Title 3, Subtitle 4 *Declaratory Judgments*) that the defendants had unlawfully created certain unclassified positions; that they had systematically and purposely abolished classified positions; that they be mandatorily enjoined to abolish all unclassified positions unlawfully created and enjoined from creating others; and that appellant Bosz be enjoined from certifying payment to employees holding unclassified positions found to have been unlawfully created.

The Circuit Court of Baltimore City ruled that some 321 positions excluded from classified service had been created improperly,

> "and, no legal authority thus existing for the creation of same outside the said 'classified service', each of the following designated positions is hereby deemed to be established as a 'classified position' within the said 'classified service' as of the date of this Decree."

— necessary parties —

Despite no claim having been made by the citizens to recover from the Secretaries the sums alleged to have been illegally paid in the past, the trial judge was concerned that the employees holding the contested positions had not been made parties to the suit. This concern was heightened when a preliminary motion by appellants Bosz and Hughes, raised the necessary party question.[4]

The trial judge held that under the Declaratory Judgment Act, Cts. & Jud. Proc. Art., § 3-405 (a),

> " 'a person who has or claims any interest which would be affected by the declaration, shall be made a party.' "

He noted that

> " 'the general rule, in equity, is that all persons should be made parties who are legally or beneficially interested in the suit.' *Reddick v. State,* 213 Md. 18, 29 (1957) [*cert. denied,* 355 U.S. 832 (1957)]",

and that he had the alternative of dismissing the suit or joining the defendants sua sponte, *Trupp v. Wolff,* 24 Md. App. 588, 593 (1975), *cert. denied,* 275 Md. 757 (1975). Relying on *Reddick, supra,* however, he selected a different course in light of the extraordinary number of employees concerned. He directed the parties to fashion a notice of the pending suit to apprise the employees of the litigation, its consequences, and their right to intervene under Md. Rule 208.[5]

---

4. Although the motion also questions appellees' standing to sue, appellants have now conceded that appellees have standing in light of Art. 64A, § 43.

5. Md. Rule 208:

"a. *Of Right.*

Upon timely application a person shall be permitted to intervene in an action: (a) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (b) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody

This was a practical application of the underlying purpose of the necessary party provision of the Declaratory Judgment Act in Cts. & Jud. Proc. Art., § 3-405, since the purposes of that section would have been adhered to; *i.e.,* to fully determine an action before the court and to provide interested parties their day in court,[6] and to avoid a multiplicity of suits.[7] See *Martin v. United Slate Wkrs. Ass'n,* 189 Md. 383, 387 (1947); *U. Slate Wkrs. v. Carpenters, Etc.,* 185 Md. 32 (1945). This practical compromise procedure, *i.e.,* notifying the employees of the litigation and of their right to intervene, has the apparent sanction of the Court of Appeals.

"There is a well established principle of law that a person who has full knowledge of pending litigation and that it affects, and will determine, his rights, and, who is entitled to appear, but who makes no

_____

or subject to the control or disposition of the court or an officer thereof.

b. *Permissive.*

1. Person.

Upon timely application a person may be permitted to intervene in an action when his claim or defense has a question of law or fact in common with the action.

2. Federal Government, State or Political Subdivision.

Upon timely application the federal government, the State, a political subdivision of the State, or any officer or agency of any of them may be permitted to intervene in an action when the validity of a constitutional provision, charter provision, statute, ordinance, regulation, executive order, requirement or agreement is drawn in question in the action or when a party to an action relies for ground of claim or defense on such constitutional provision, charter provision, statute, ordinance, regulation, executive order, requirement or agreement. This subsection shall not limit the rights provided by § 3-405 of the Courts Article."

6.

"The object of the rule that requires all necessary parties to be joined is to be sure that no one's rights are adjudicated unless he has had his 'day in Court'; and that there will be a complete determination of the matters in dispute in one suit (this latter being subject to certain exceptions not here pertinent)." Reddick v. State, 213 Md. at 30.

7.

"One of the primary reasons for the above quoted part of section 11 was to make any decree rendered by the Court a final and complete determination of the subject matter in dispute, and thereby prevent a multiplicity of suits." Williams v. Moore, 215 Md. 181, 185 (1957).

The "section 11" referred to is essentially that which is contained in Cts. Art., § 3-405 (a) quoted by the judge.

effort to intervene as a party, and permits a conclusion thereof without objection, such party is concluded by the proceedings as effectually as if he were named on the record." *Reddick, supra* at 30.

— the special law —

While efforts were being made to fashion an adequate notice to the employees, the Maryland General Assembly convened for its 1978 session. There was pending in the Senate, Senate Bill 216 which had been introduced by Senator James Clark (now President of the Senate), then Chairman of the Senate Finance Committee, at the behest of John F. X. O'Brien, Assistant Secretary of the Department of Personnel. In its original form, the bill, as described by Mr. O'Brien, contained certain "boiler plate" language for standardizing a procedure when transferring local or municipal government employees into State service — a recurring problem that had been unresolved "over the years".[8] The language of the original bill is presently codified as Md. Code, Art. 64A, § 51A. It was enacted as "SECTION 1" of Chapter 440 of the Laws of Maryland, 1978:

"SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That section(s) of the Annotated Code of Maryland be repealed, amended, or enacted to read as follows:

Article 64A — Merit System 56.[51A].

(A) AN EMPLOYEE WHO IS TRANSFERRED TO THE STATE MERIT SYSTEM ACCORDING TO THIS SECTION, UNLESS OTHERWISE SPECIFIED IN THE ENABLING LEGISLATION TRANSFERRING SUCH EMPLOYEE TO THE STATE MERIT SYSTEM, SHALL BE APPOINTED WITHOUT FURTHER EXAMINATION OR QUALIFICATION. THE EMPLOYEE SHALL BE PLACED IN THE STATE CLASSIFICATION THAT IS COMPARABLE IN DUTIES AND

---

**8.** This information was obtained from the records of the House Appropriations Committee.

RESPONSIBILITIES TO THE EMPLOYEE'S FORMER POSITION.

(B) THE EMPLOYEE MAY NOT SUFFER A DIMINUTION OF SALARY OR WAGES, ACCRUED LEAVE, WHETHER EARNED OR GRANTED, OR SENIORITY RIGHTS. ANY INCREASE IN SALARY OR WAGES GRANTED SUBSEQUENT TO PASSAGE OF THE LEGISLATION ENABLING THE TRANSFER, MAY BE RETAINED ON APPOINTMENT TO THE CLASSIFIED SERVICE ONLY IF THE SECRETARY APPROVES. THE SECRETARY SHALL CONSIDER THE MONETARY VALUE OF ANY AND ALL OTHER BENEFITS, ENTITLE-MENTS, SERVICES OR PREROGATIVES AND, AT HIS DISCRETION AND IN CONSIDER-ATION OF THE BEST INTERESTS OF THE CLASSIFIED SERVICE, MAY CONSIDER THESE VALUES OR A PORTION OF THEM WHEN ESTABLISHING THE RATE OF SALARY ON APPOINTMENT. AFTER APPOINTMENT, THE EMPLOYEE IS ENTITLED TO THE SAME BENEFITS PROVIDED TO CLASSIFIED EM-PLOYEES ESTABLISHED BY THIS ARTICLE."

While the original bill was progressing through the legislative process, the employees whose jobs were jeopardized by the then pending litigation appear to have seen that bill as a conveyance for protecting themselves from the appellee's assault on their positions. Thence came an epistolary deluge upon the House Committee on Appropriations. It found a procedural parliamentary solution for the employees, a procedural device little known beyond those hallowed halls, which permitted the new language to be added to the law carrying all of the force and effect of law, but

not codified. It amended the Senate Bill by adding a "SECTION 2", which read:

> "SECTION 2. AND BE IT FURTHER ENACTED That the Secretary of Personnel shall transfer to the State merit system any key or unclassified employee of the Department of Transportation whose position is judicially determined in any action filed in any court of competent jurisdiction prior to January 1, 1978 to have been created unlawfully or otherwise be unlawful."

Only the original language appearing as SECTION 1 of the original bill would be printed in the Annotated Code of Maryland.

When this device is used by one attempting to enact a self-interest "special law", contrary to Md. Const., Art. III, § 33, it is in legislative jargon known as a "snake" or a "bell ringer"; but when properly used (*e.g.,* to implement legislation requiring transitory provisions), it has the benefit of effecting a necessary purpose without cluttering legal codes already far too encumbered by unnecessary enactments. Even one who is aware of such legislation must seek these uncodified enactments either in the Session Laws of Maryland or in the journals. The one in question appended to Senate Bill 216 appears with its more apparent benefactor (§ 51A) in Chapter 440, 1978 Laws of Md.

We are compelled to digress a moment to discuss this law which was enacted as Chapter 440, Laws of Maryland 1978, effective July 1, 1978. One is hard pressed to determine what was effected by its enactment. By researching the records and files of the General Assembly and its committees, we were able to discern that the original purpose of the original bill appeared to be to standardize a procedure as described in the original title which explained that it was:

> "FOR the purpose of providing for the appointment, salary or wages, leave, and seniority of employees transferred into the State merit system;".

The body of the bill (original and as enacted) did not provide for that broad purpose. It restricted its protections in the very first sentence to

> "AN EMPLOYEE WHO IS TRANSFERRED TO THE STATE MERIT SYSTEM ACCORDING TO THIS SECTION . . . ." (Emphasis added).

In its original form,[9] the protections would have applied to no one since that section in the law did not provide for any transferring employees directly or by reference. If enacted in its original form, the law would make no sense at all. Compare Md. Code, Art. 64A, §§ 2, 5 and 7-9Q which designated clearly the positions to be transferred to the classified service from time to time.[10]

---

**9.** The original bill proposed to add a new "Section 56" to Article 64A. Another bill was enacted in the same 1978 Session proposing to add a new "Section 56" dealing with an entirely different subject matter, *i.e.*, the "Defense of Sovereign Immunity". Chapter 523, Laws of Md. 1978. Presumably, the codifier took upon himself to designate Chapter 440 as adding "Section 51A". Although the change in this instance did not affect the law despite the bill's subjective reference "ACCORDING TO THIS SECTION", such arbitrary redesignations could seriously affect the entire purpose and intent of a law.

**10.** § 2. Employees of penal institutions.
§ 5. Police at State colleges.
§ 7. Comptroller's office; Veterans' Commission; Board of Cosmetologists.
§ 8. Assistant State auditors.
§ 8A. Assistant Secretary of State.
§ 9. Toll collector or superintendent of Washington and Berkeley Bridge.
§ 9A. Contractual employees of Department of Public Improvements.
§ 9B. Positions in State Civil Defense and Disaster Preparedness Agency.
§ 9C. Positions in State Department of Legislative Reference and Department of Fiscal Services.
§ 9D. Temporary inspectors in Baltimore City taxicab driver licensing program.
§ 9E. Employees of Sheriff's office in Baltimore City.
§ 9F. Contractual employees of bookshop of Towson State College.
§ 9G. Employees of boards of supervisors of elections.
§ 9H. Right-of-way agents in Interstate Division of Baltimore City.
§ 9-I. Certain employees of Prince George's County and Baltimore City transferred to State Division of Parole and Probation.
§ 9-J. Certain employees of Harford County transferred to State Division of Parole and Probation.
§ 9J-1. Certain employees of Baltimore County transferred to State Division of Parole and Probation.
§ 9K. Terminal operators and proofreaders in Department of Legislative Reference.

When the Legislature added the aforementioned SECTION 2 which was never codified, it amended the title of the bill by adding new language presumably to describe that which the amendment encompassed. What was added to the title, however, appears to have changed the original purpose of the bill from establishing a general standard for an enigmatic source of transferees to apply as amended only to "certain" employees described so carefully as to be all but named. Using italics to indicate the title's new language amended as descriptive of the effect of adding the "SECTION 2" to the body of the bill, the title of the bill as enacted reflects the accuracy of this observation:

> "FOR the purpose of providing for the appointment, salary or wages, leave, and seniority of *certain* employees transferred into the State merit system; and providing that the Secretary of Personnel shall transfer to the State merit system certain employees whose positions are judicially determined in any action filed prior to January 1, 1978 to have been created unlawfully or to otherwise be unlawful."

As amended the bill makes some sense, since it tells us who are the particular employees to which the law will now restrictively apply, *i.e.,* those described in the "SECTION 2" uncodified amendment. We are not called upon to decide the constitutionality of the legislation in question, nor was the trial judge; however, as so read, the facial validity of the bill as it appears finally enacted as Ch. 440, gives us pause, to say the least.

---

§ 9L. Contractual employees of bookstore and snack bar of Salisbury State College.
§ 9M. Employees of University of Baltimore.
§ 9N. Employees of Chesapeake Park, Inc., assigned to work at Glenn L. Martin State Airport.
§ 9-O. Employees of Hall of Records Commission.
§ 9P. Clerical and administrative employees of soil conservation districts.
§ 9Q. Somerset County employees operating state-owned equipment used in mosquito control.

Md. Const., Art. III, § 33 says, among other things,

"[a]nd the General Assembly shall pass no special Law, for any case, for which provision has been made, by an existing General Law."

A special law is defined as a special law for a special case. *Potomac Sand & Gravel v. Governor,* 266 Md. 358 (1972), *cert. denied,* 409 U.S. 1040 (1972); *Beauchamp v. Somerset County,* 256 Md. 541 (1970); *Jones v. House of Reformation,* 176 Md. 43 (1939). A special law is also defined as one that relates to particular persons or things of a class as distinguished from a general law which applies to all persons or things of a class. *Prince George's Co. v. B. & O. R. Co.,* 113 Md. 179 (1910). The amendment adding the uncodified SECTION 2 gives the entire Act all of the appearances of a special law passed for a special case relating to particular persons within a class of State employees. The amendment in question and the entire law as described by the title (which Md. Const., Art. III, § 29 requires) so clearly addresses this problem then pending in this case, that it all but names the parties and the employees it intended to affect. While the constitutionality of the Act is not before us, we cannot disregard its questionable appearance in light of the "necessary party" question we must address.[11]

Following the July 1, 1978 effective date of the job saving statute, presumably, the parties lost little time in prevailing upon the judge for a reprieve from the requirement of notifying the employees. The record extract contains the following:

"STIPULATION OF THE PARTIES

At a court conference held in chambers on July 13, 1978, the court below determined that because of the

---

11. Our raising the possibility of the constitutional infirmity of Chapter 440, in light of Md. Const., Art. III, § 33, may indicate that we have decided that question or that we are indicating how we believe it should be decided upon remand. No such inference should be drawn therefrom, nor should one infer that there are no other sections of the constitution which may cast similar shadows upon the Act. *E.g.,* see Md. Const., § 29. The purpose of pointing to the possible constitutional jeopardy of the Act is to emphasize the inadvisability of viewing special legislation as a substitute for judicial procedural prerequisites.

"enactment into law of Chapter 440, Acts of 1978, the notice to affected employees called for by the Intervention Order of Court, dated December 19, 1977, was no longer necessary and that the case should proceed without the necessity of the sending of the notice required in said Order. Through inadvertence, this determination does not appear on the record of the case."

The job saving statute appears to have lulled the judge into a false sense of security that the employees no longer had "any interest which would be affected by the declaration".

— "any" interest —

The necessary party provision (§ 3-405 (a)) of the Declaratory Judgment Act provides that (1)

"[i]f declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party."

It reemphasizes the importance of doing so by suggesting an alternative test by establishing the sanction that (2)

"[e]xcept in a class action, the declaration may not prejudice the rights of any person not a party to the proceeding."

The Court of Appeals has interpreted what is now § 3-405 (a) of the Declaratory Judgment Act on "many occasions" as holding that "all persons interested in the declaration are necessary parties". It has further held that

"the presence of necessary parties is jurisdictional, and this is a matter which the parties present cannot waive." *Williams, supra* at 185.

The preliminary question on appeal, therefore, is whether the employees of the positions sought to be declared to have been illegally created had "any interest which would be affected by the declaration" remaining, despite the enactment of the codified § 51A and its SECTION 2

statutory ghost. Despite the enactment of the "saving statute" appended to Senate Bill 216, the obvious answer is in the affirmative.

Although we are not able to find a precise definition of what constitutes the interest necessary to raise a nonparty to a necessary (as contrasted with proper) party, it is significant that Cts. Art., § 3-406, immediately following the necessary parties section, sets forth, as a proper party:

"Any person interested . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity . . . and obtain a declaration of rights, status, or other legal relation under it."

Since the very heart of the case is statutory constructions [12] which would vitally affect the status, if not the rights and other legal relations of the employees holding positions under the statutes, these employees would have been "proper" parties as "person[s] interested" under § 3-406 providing standing to *bring* an action for declaratory judgment. How can we say then that these people are not necessary as having "*any* interest which would be affected" (emphasis added) under § 3-405 (a) (1), or the rights of whom would not be prejudiced under (a) (2)?

---

**12.** Appellants alleged, among other contentions, that:

"The Circuit Court Erred in Its Interpretation of Section 2-102 (d) of the Transportation Article (1977).

. . .

The Circuit Court Erred in Its Interpretation of Article 64A, Section 3, Ann. Code of Md., (1978 Cum. Supp.).

. . .

The Circuit Court Erred in Its Interpretation of Section 207C(e), Article 41.

. . .

Section 207C(e) Confirmed the Lawfulness of Key Status for Certain Positions.

. . .

The Circuit Court Erred in Disregarding the Significance of Section 207C(e).

. . .

The Circuit Court's Definition of 'Expert Training and Qualifications' is Erroneous."

The employees' "interests" are of real concern seriously prejudicing their rights (§ 3-405 (b)) even if the special amendment added to Senate Bill 216 to protect them is valid. There are three very apparent areas of interest prejudiced by the adverse declaration:    .

1. The interest in the job geographically. The saving statute provides transferees "comparable" duties, responsibilities, wages, benefits, entitlements, etc. It does not require that the comparable position be in the same geographic area wherein the transferee is presently located. Thus, if an employee in Baltimore City was given a comparable position in Oakland or Pocomoke, the Secretary of Personnel would have complied with the saving statute. To avoid such uprooting of one's domicile indeed amounts to "any interest . . . affected by the declaration".

2. Their interest in preserving the job status outside the classified service. It is obviously difficult to argue to some that the benefits of a tenured type merit system do not outweigh the dangers of an untenured position sustained at the will of the employer and based entirely upon the employee's satisfactory performance as judged by his superiors. Yet there are those who retain that self-satisfying spirit of professionalism that employment may be retained by one's abilities and productivity, rather than by legislative fiat, or rule of law or contract. Furthermore, an unclassified employee is not subject to the procedural strictures of the merit system in advancing himself financially or otherwise, and may be singled out for advancement for exceptionally good performance, as well as plucked out for exceptionally bad performance. For many there is also a grievance procedure established by executive order comparable to that provided in the classified system. See Md. Code, Vol. 9A p. 612, *et seq.* For others that inclusion — at the will of the Chief Executive — is a likelihood. The right to reject security for independence is itself an interest one may well wish to protect.

3. Their interest of avoiding the potential jeopardy of having to repay past earnings in the event their jobs are

declared illegal. The statute under which the "citizens" claimed standing provided not only for enjoining future payments for illegal positions but also permitted recovery from the offending Secretaries, for the use of the State, any sums illegally paid. Art. 64A, § 43. Despite the citizen-appellees not having sought that remedy, once a declaration of illegality is had, other "citizens" may well be spurred on to recover from the offending Secretaries, those payments illegally made, to replenish the State coffers. The Secretaries, if so jeopardized, would wish to have available, in the event of judgment, the availability of the proceeds illegally paid out, to ameliorate their personal responsibility to repay those funds. More likely than not the employees would be subject to joinder as third party defendants for purposes of indemnification or contribution. Who would prevail in such event is neither for us to predict, nor is it relevant to the issue here. It will suffice for the purposes of this case that the employees' jeopardy provides adequate concern to establish the interest prerequisite to their having been made necessary parties or notified of their jeopardy and right to intervene.

If such case arose, one can also imagine the legal turmoil when a Secretary having been a party to the declaratory judgment action would apparently be estopped from using the defense of legality of the payments, and third party employees demanding the right to readjudicate the question because they were not parties to the action and their rights under § 3-405 (b) could not be prejudiced by the declaration. The declaration here, if left to stand, would not prevent a multiplicity of suits which is its primary purpose, *Williams v. Moore, supra.* It would adjudicate the rights of persons who have not had their day in court, and obviously could not, without the affected employees, be a complete determination of the matters in dispute in one case. *Reddick, supra.*

We find inapposite appellees' argument, citing *Bishop v. Wood,* 426 U.S. 341 (1976), that in order to be necessary parties, employees must have a constitutionally recognized property interest in their employment. The issue here is not a question of deprivation of due process as in *Bishop* which

required a constitutionally protected interest to obtain necessary party standing. We are concerned here only if there is "*any* interest which would be affected by the declaration" (emphasis added), which is the statutory test in § 3-405 (a). The trial judge cogently addressed that question in his opinion of November 17, 1977 initially declaring that the employees were necessary parties, but that notice of the right to intervene was a satisfactory substitute for dismissing the case.

> "While it is true that the unclassified employees can be terminated at the unbridled discretion of the Secretary, the Secretary has the power to decide whether or not to exercise this discretion. However, if Plaintiffs are successful on the merits, then the Secretary will be *compelled* to terminate these positions, and the affected employees will not only lose their jobs as unclassified employees but will be required to take competitive examinations for the ensuing classified positions, and there is no assurance that they will be successful in being rehired in the merit system positions. Success by Plaintiffs in this litigation will, therefore, eliminate the discretionary employment that these employees now enjoy and may well eliminate their future employment with the State in similar capacities. It is clear that this litigation could substantially affect the employment interest of some or all of the members of this group."

His error was in not completing his original purpose.

We will, therefore, reverse the judgment of the trial court and return the case to square two, the Motion Raising Preliminary Objection, which raised the necessary party question and prayed dismissal of the case with prejudice. That extreme sanction, however, goes too far. To the extent the motion addressed the want of necessary parties,[13] it was in the nature of a demurrer — a demurrer that should have

---

13. It also questioned appellees' standing to sue, see n. 4 *op cit.*

been sustained but with leave to amend. The trial judge, as we here hold, was initially correct in following the *Reddick* alternative,

> "Requiring Plaintiffs to add to their suit some 300 employees as additional defendants would be a time-consuming and expensive undertaking, both to Plaintiffs themselves as well as to those employees who are not desirous of engaging legal counsel separate from those now representing the two Secretaries. The efficient administration of justice would be more expeditiously served by giving those employees who are desirous of doing so the opportunity to intervene in the case and thereby protect their interests. Those employees who are apprised of the litigation and make no effort to intervene will be bound by the eventual decision in this case to the same extent as if they had been made parties to the suit. *Reddick v. State, supra,* 213 Md. at 30.
>
> Therefore, the Court will direct the present parties to formulate a procedure for notifying all of the affected employees of the present litigation and their right to intervene as additional defendants if they desire to do so. Such notification can be by registered or certified mail or hand delivery. The proposed procedures will be submitted to the Court for prior approval. After such notification is made and replies thereto are received, a trial date on the merits will be scheduled",

but erred by not compelling completion of that compromise when lulled into false security by the saving statute. Upon reversing, we will, therefore, remand the case and direct the trial judge to compel compliance with his November 17, 1977 Memorandum and Order on Preliminary Matters. Because the responsibility for failure to include the necessary parties was appellees, their case should be dismissed with prejudice if they have failed either to join the necessary parties or to comply with the November 17, 1977 order, within a

reasonable time set forth by the trial judge. Anticipating retrial, we think it fitting to point out two areas of concern which seem to have escaped the attention of the parties and the trial judge.

Perhaps the reason the Legislature has been reluctant in the past to provide a proliferation of citizen standing statutes to adjudicate matters of governmental concern, derives from the singular interests of those who have the zeal to litigate such questions. So intent does one become upon one's goal, that the administrative erosion peripherally caused in the wake of the judicial storm is obscured to the litigant who is not educated to foresee the dangers, until it is too late to bulkhead the damaged shoreline.

Here, for example, both litigants and court were so involved in whether the positions at issue were classified or unclassified, it never occurred that the court had the authority *only* to declare the positions legal or illegal — and nothing more. That portion of the final decree following the declaration of illegality of the positions, which declared that,

> "each of the . . . positions is deemed to be established as a 'classified position' within the said 'classified service' as of the date of this Decree,"

would have to have been vacated even if there had been no reversible error in the case.

Not only did such judicial reclassification go beyond what the citizens sought in their original petition, it exceeded the bounds of judicial authority as well. There is to our knowledge no authority for a judicial branch of government to create positions in the executive branch of government. This authority is solely within the realm of the legislative and executive branches acting within their respective roles. Even the statute (intended to protect the employees) strives to do so, not by reestablishing or authorizing the judicial reestablishment of the *positions* "judicially determined . . . to have been created unlawfully", but by directing the Secretary of Personnel to transfer the "employee" to a "comparable" position. Keeping in mind that the original purpose of the original portion of Senate Bill 216, codified in

Section 51A (a), was intended to apply to employees from other governments or branches thereof who were taken into State service, the express language makes it clear:

> "The [transferring] employee shall be placed in the State classification that is *comparable* in duties and responsibilities to the employee's former position." (Emphasis added).

That is the extent of relief legislatively granted, *i.e.*, to provide a comparable job, not a revitalization or recreation of the positions. The extent of the relief judicially available, then, is to determine the legality or illegality of the contested positions.

If the trial judge again declares that the positions were illegally created, the State is left without 321 positions that were, arguably at least, filled by "key personnel, staff assistants or trained experts". As noted, 285 were with the Port Authority, and included port police. While the *employees* formerly holding these positions might be eligible to be placed elsewhere in comparable positions, the authority to reassign them to their identical former roles is questionable. It may be necessary administratively or legislatively to create comparable classified positions to carry out the duties left open by any declaration of illegality. That problem is one for the Legislature or, if left solely under the suspect saving statute, for the Secretary of Personnel and the Secretary of Transportation. Since the case must be retried following joinder (or notification) of the necessary parties, both the Legislature and Personnel Secretary are herewith forewarned of the ominous cloud and likely result of litigation looming. It is they who are authorized to create classified positions in places of illegally created unclassified ones, not the courts. We may rule only upon the legality of that which exists; we may not create that which speculatively ought to exist.

Finally, we assume those employees who will intervene or be joined will raise the question of constitutionality of their "saving statute" authoritatively found only as SECTION 2 of Chapter 440 of the Laws of Maryland 1978. Judicial reliance

upon the specially enacted statute with a determination of constitutionality, even as a job protection for the employees would be and was a precarious judgment at best. We have indicated, without holding, the special enactment has the initial appearance of a "special law" which is a question of vital concern to the new necessary parties. Unless decided with this case, "citizens" seeking to protect the State coffers may very well bring a subsequent action under Art. 64A, § 43, for another declaratory judgment of unconstitutionality if the Secretary of Personnel carries out the legislative mandate of the uncodified SECTION 2 of Senate Bill 216 in the likely event the positions are again declared illegal.

*Judgment reversed.*

*Case remanded to the Circuit Court o: of Baltimore City for retrial pursuant to this opinion.*

*Costs to be paid by the appellees.*