You have asked for our opinion on the legality of a longstanding practice under which the Maryland State Department of Education ("MSDE" or "Department") contracts with a local school system to "borrow" employees of the local system to work at the Department. The practice of entering into these agreements, known as "loaned educator" contracts, was questioned by the Legislative Auditor during a recent audit.
In our opinion, MSDE may enter into "loaned educator" contracts with local school systems to obtain the services of employees of those school systems on a temporary basis. If a loaned educator is to work for MSDE for more than a brief period of time, the individual should become a State employee in the State Personnel Management System.
 I Loaned Educator Contracts
In a "loaned educator" contract, MSDE enters into an agreement with a local school system under which an employee of that school system is to work at MSDE for a specified period of time while formally remaining an employee of the local school system. The agreement is documented on MSDE's standard Contractor Agreement form that identifies MSDE and the local school system (labeled the "Contractor") as the contracting parties. Each contract concerns the services of a specified employee of the local school system. The local system continues to pay the individual's compensation and benefits. Under the contract, MSDE reimburses the local school system for the employee's salary and benefits. A *Page 98 
special addendum to the Contractor Agreement specifies work hours, timekeeping, leave, compensatory time, holidays and similar matters, and is signed by the loaned educator (labeled the "Contractor's Employee"), in addition to MSDE and the local school system.
We understand that, during recent years, approximately 60 to 80 individuals have worked at MSDE each year under loaned educator contracts. Some individuals have worked at MSDE for many years under a series of such contracts. Many of these individuals have performed administrative or managerial functions at MSDE. Indeed, we understand that loaned educators have filled key positions such as Assistant State Superintendent, Executive Director, and Director positions in recent years. The compensation of some of the loaned educators pursuant to the local system's pay scale exceeds what would be paid under State pay scales. MSDE's payments for loaned educators are reflected in the contractual services, rather than the personnel, section of the Department's budget.[1]
You state that the Legislative Auditor raised questions about the legality of MSDE's practice of entering into such contracts during a recent audit. Accordingly, you requested this opinion.
 II Analysis
A. General State Policy to Use State Employees
The Legislature has evinced a general policy that a State agency should ordinarily rely on State employees, who occupy positions authorized in the State budget, to perform State functions. This longstanding policy is currently expressed in several statutes. See Annotated Code of Maryland, State Personnel Pensions Article ("SPP"), § 13-202[2] (generally requiring certification by Secretary of Budget and Management that services cannot be performed by permanent employee as prerequisite to use of *Page 99 
contractual employees); SPP § 13-402[3] (State policy to use State employees to perform State functions in favor of private contracting); SPP § 6-302(a)[4] (all positions in Executive Branch are in State Personnel Management System unless "otherwise provided by law"); Annotated Code of Maryland, State Finance Procurement Article ("SFP"), § 7-236[5] (a unit of the Executive Branch "may not create a permanent staff position that is in addition to the positions for which the State budget and its supporting documents specifically provide . . . [subject to certain exceptions not relevant here]").
The use of loaned educator contracts to staff the Department would appear to be at odds with this general policy, particularly to the extent that loaned educators occupy virtually permanent positions at MSDE. The legality of the practice, however, must be measured against specific laws. As noted above, the loaned educator agreements are contracts for personal services. We have therefore considered the validity of loaned educator contracts in light of: (1) the State Procurement Law; (2) the State personnel law — in particular, the statute governing contractual employees; and (3) the laws that specifically relate to the staffing of the Department.
B. State Procurement Law
The State Procurement Law generally governs contracts for services.See SFP § 11-202 (scope of Procurement Law); § 11-101(m) ("procurement" includes buying or otherwise obtaining services). However, the loaned educator contracts are between two government agencies — MSDE and the local school system . They are thus intergovernmental contracts exempt from the Procurement Law. SFP § 11-203(a)(2). Accordingly, the State Procurement Law would not bar the Department from entering into these contracts. *Page 100 
C. State Personnel Law — Contractual Employees
Individuals who work for an agency pursuant to a contract may fall within the category of "contractual employees." A contractual employee may only be hired with approval from the Department of Budget and Management, must be paid at a rate comparable to that of State employees, and may only be used for temporary, infrequent, and unusual reasons. SPP § 13-202. If loaned educators are considered contractual employees, their appointment and placement at MSDE would be subject to those restrictions.
The governing statue defines a "contractual employee" as an individual:
 (1) who, under a written agreement, provides temporary personal services to the State for pay;
 (2) who is not employed in a budgeted position; and
 (3) who has an employer-employee relationship with the State in which the State:
 (i) furnishes necessary tools and a place to work;
 (ii) has the right to control and direct the details, means, and results of the performance of the services; and
 (iii) has the right to discharge the individual from employment.
SPP § 13-101(a).
Loaned educators do not appear to fit this definition. As we understand it, a loaned educator does not have a contractual relationship with the State; rather, the contractual relationship is between MSDE and the local school system. If the State enters into a contract with a third party to provide services for the State and that contractor employs individuals to perform those services, those individuals remain employees of the contractor and are not transformed into contractual employees of the State. Moreover, while MSDE has the right to terminate the contract with the local *Page 101 
school system, it does not have the right to discharge the individual from employment. If the contract were terminated, the individual would remain an employee of the local school system unless that system chose to discharge the individual.
Because loaned educators are not contractual employees, loaned educator contracts are not subject to the restrictions in SPP § 13-202.
D. Laws Governing Appointment of Department Staff
Two provisions that have governed staffing at MSDE for several decades provide seemingly contradictory indications as to the validity of the loaned educator program. On the one hand, a longstanding Department regulation contemplates the "release" of local school personnel to MSDE under agreements between MSDE and the respective local school systems. COMAR 13A.07.02.02. This regulation appears to be the basis for loaned educator contracts.
On the other hand, the statute concerning appointment of MSDE professional staff provides that, from nominees proposed by the State Superintendent, the State Board of Education "shall appoint all
professional assistants to the Department, who shall be in the executive service, management service, or special appointments in the State Personnel Management System." Annotated Code of Maryland, Education Article ("ED"), § 2-104(b) (emphasis added). This statute appears to mandate that the Department's professional staff be State employees. This would appear to rule out the use of loaned educators who remain employees of a local school system.
We believe that these provisions may be harmonized when their historical development is considered.
1. Statute and Regulation Concerning Reciprocal Relationships
A longstanding Department regulation specifically authorizes intergovermental contracts with local school systems for the services of local school personnel. This regulation pre-dates the creation of the Code of Maryland Regulations ("COMAR") in the early 1970s, but has since been incorporated into COMAR.[6] It states: *Page 102 
 02. Reciprocal Relationships with the State Department of Education.
 A. Contracts and Agreements for the Release of Local School Personnel to the State Department of Education. All agreements shall be in writing and shall set forth the following:
 (1) The period of time for the release of local school personnel to the State Department of Education;
 (2) The terms of the financial reimbursement by the State to the local school system;
 (3) The contract and tenure rights of the teacher may not be affected by the agreement;
 (4) The agreement shall be signed by the local school superintendent and by the Secretary-Treasurer of the State Board of Education and when signed shall be filed by the Secretary in the office of the Board.
COMAR 13A.07.02.02A.[7] This regulation appears related to an initiative in the late 1960s to place professional staff from local school systems at the Department.
In 1966, pursuant to a joint resolution of the Legislature, the Governor appointed a commission to review the laws governing schools in Maryland. The Commission was chaired by David W. Zimmerman, then Deputy State Superintendent of Schools, and it is sometimes referred to as the "Zimmerman Commission." Among its various recommendations, the Zimmerman Commission proposed that the Legislature enact a new provision, to be codified in the State education law at Article 77, § 45A, governing "reciprocal procedures *Page 103 
for the transfer of professional personnel from the local school systems to the State Department of Education." Report of the School Law Revision Commission (1968) at p. 36. The Zimmerman Commission suggested the following language:
 All administrative and supervisory personnel who shall transfer from local school systems in the State and who shall be appointed to comparable job classifications in the State Department of Education shall be given credit as employees of the State Department of Education for the years of service rendered as employees of the local school systems from which they shall have transferred, for the purposes of establishing compensation rates and basic rates for vacation and sick leave credit earnings. No such employee who has transferred from a local school system to the State Department of Education shall receive any diminution in compensation solely as a result of such transfer and appointment.
Id. at 58. The intent of this provision appears to have been to "hold harmless," in terms of pay and benefits, any professional employees of local school systems who transferred to MSDE. The premise appears to be that an employee of a local school system who transferred to MSDE would become an employee of MSDE.
A version of this proposal was enacted by the Legislature as part of a 1969 overhaul of the State school laws. Chapter 405, Laws of Maryland 1969. It was codified as Article 77, § 31 — between newly codified sections concerning appointment of deputy superintendents and other professional assistants (§§ 30, 32) — and gave any employees who transferred from local systems "credit" at MSDE for the years they spent in the local systems. (The guarantee against "diminution of compensation" was apparently dropped). Again, the premise appears to be that the former employees of local school systems would become employees of MSDE. A few minor changes were made to the statute in the mid-1970s. When the Education Article was created in 1978, this section was separated from the provisions concerning appointment of professional *Page 104 
assistants[8] and codified at ED § 6-204, where it has remained unchanged to the present.[9]
At about the same time that the Zimmerman Commission made its recommendation concerning "reciprocal procedures" for the transfer of professional employees from local school systems to MSDE, the State Board of Education adopted what was then called a "bylaw" and what is now the regulation codified at COMAR 13A.07.02.02A. That regulation bears a title somewhat similar to the 1969 enactment — "Reciprocal Relationships with the State Department of Education." As noted above, it authorizes the temporary "release" of local school personnel to MSDE under written agreements between the local school system and MSDE.
It is thus apparent that during the late 1960s considerable thought was given by policy makers to the placement at MSDE of local school personnel. Given the passage of time and the minimal *Page 105 
legislative history preserved from that period, we have found no documentation of the purpose of such placements. Nor is the precise relationship between ED § 6-204 and COMAR 13A.07.02.02A entirely clear. We assume, however, that it was thought that individuals with hands-on experience in the schools could make a valuable contribution in setting educational policy at the Department; if and when such an employee returned to the local school system, the employee would bring a new statewide perspective.
What is clear from the text of the regulation is that it contemplated a practice of temporary "detailing" of local employees to the MSDE. Presumably, those who stayed with MSDE and did not return to their local systems would become MSDE employees and would receive the employment credit conferred by ED § 6-204 and its predecessor provisions. It seems unlikely that the regulation was intended to create a program under which local employees would work at MSDE for an extended period of time without becoming direct employees of MSDE — a program that would be at odds with the statutory conditions for creating permanent staff positions. See SFP § 7-236(a).[10] A temporal limitation on the use of loaned educators is also consistent with the general policy that State functions be performed by State employees and that permanent staff positions be set out in the annual budget. 2. ED § 2-104
The question remains whether the contracts authorized by COMAR13A.07.02.02A are compatible with the provisions concerning Department staffing in ED § 2-104. That statute provides *Page 106 
specific direction concerning the appointment and status of professional personnel at MSDE. It states, in pertinent part:
 (a) The following professional assistants shall be appointed to the Department:
 (1) No more than three Deputy State Superintendents of Schools.
 (2) Any assistant State superintendents and directors authorized by the State Board and provided in the State budget; and
 (3) Any other professional assistants and agents authorized by the State Board and provided in the State budget.
 (b)(1) From the nominees proposed by the State Superintendent, the State Board shall appoint all professional assistants to the Department, who shall be in the executive service, management service, or special appointments in the State Personnel Management System.
 (2) With the advice of the State Superintendent, the State Board shall set qualifications for each professional position.
 (3) The State Superintendent may transfer professional assistants within the Department as necessary.
ED § 2-104(a)-(b). The use of loaned educators to perform the functions of professional positions raises two questions under this statute: (1) whether the loaned educators are "provided in the State budget" and (2) whether the individual filling the position is in the State Personnel Management System.
Whether Loaned Educators are "Provided in the State Budget"
As to the first question, one might read "provided in the State budget" to mean that the loaned educators are positions specifically authorized by PIN number in the budget materials submitted with the State budget bill. If so, loaned educators do not satisfy this criterion. *Page 107 
On the other hand, there is provision for payment of these contracts in the portion of the State budget that appropriates funds to MSDE for contractual services. Accordingly, it is possible to conclude that loaned educator appointments satisfy this criterion.
Whether Loaned Educators Must be in the State Personnel ManagementSystem
With respect to the second question, a loaned educator remains an employee of a local school system and is not in the State Personnel Management System. While the verb "shall" ordinarily is presumed to express a mandate, [11] on occasion it does not.[12] If the reference to the State Personnel Management System in ED § 2-104 mandates that all professional functions in the Department be performed at all times by State employees, loaned educator contracts may not be used to have local system employees perform those functions.
The statement that professional personnel at MSDE "shall be in the State Personnel Management System" was not part of this statute when the provisions concerning reciprocal relationships were enacted in the late 1960s. See Annotated Code of Maryland, Article 77, §§ 30, 32 (1969 Repl. Vol.). Nor did the phrase appear in the statute when it was recodified as ED § 2-104 when the Education Article was created in 1978. Chapter 22, Laws of Maryland 1978. A reference to the State personnel system was added to ED § 2-104(b) in 1993 as part of a bill designed to correct cross-references throughout the Annotated Code to recognize a revision of the State personnel system. Chapter 22, Laws of Maryland 1993. This addition to the statute was apparently viewed as a non-substantive change and was not intended to impose new restrictions on existing positions. See Chapter 22, § 3, Laws of Maryland 1993.[13] *Page 108 
The phrase "shall be in . . . the State Personnel Management System" was added as part of code revision and was not intended to create a new mandate. It is likely that the revisors felt comfortable that this phrase did not effect a substantive change in the law because it simply reflects a general State policy expressed in the various statutes set forth in Part II.A. of this opinion. In addition, the statute otherwise appears to presume that the professional assistants listed in ED § 2-104 are part of the State personnel system. For example, subsection (c) concerns procedures for dismissing such employees and makes a distinction between employees at grade 31 and above and those below that grade.[14]
 3. Harmonizing the Staffing Provisions
From the preceding discussion, it is evident that ED § 2-104
contemplates that professional assistants will be State employees. But, as we have also seen, other longstanding provisions governing MSDE staffing appear to contemplate that local school system employees may work at MSDE, at first temporarily while still employed with the local school system and perhaps later on a permanent basis. It is a well known canon of statutory construction that statutes and other laws governing a particular subject should be harmonized to the extent possible. Reier v.State Department of Assessments and Taxation, 397 Md. 2, 29-30,915 A.2d 970 (2007).
In our view, the apparently contradictory provisions may be harmonized if an individual works at the Department under a loaned educator contract only temporarily and either transfers to State service or returns to the local school system. The statute and related regulation concerning "reciprocal relationships" with local school *Page 109 
systems, which were adopted in the late 1960s, appear to contemplate that local school personnel may perform professional functions at MSDE on a temporary basis under an intergovernmental contract before fully transferring to State service. In order to comply with the general State policy favoring the use of budgeted State employees to carry out State functions — reflected as well in the language of ED § 2-104(b) — the individual must transfer to State service or return to the local school system within a reasonable period of time.
An analogous situation was addressed in a prior Attorney General opinion. 64 Opinions of the Attorney General 246 (1979). That opinion concerned the question of whether an individual who is nominated to a cabinet post at the beginning of a Governor's term could carry out the duties of that position prior to satisfying all the conditions for holding the office. Attorney General Sachs concluded that a nominee could serve in an "acting" capacity prior to confirmation.[15] In a similar fashion, a loaned educator may fill a professional assistant position at MSDE for a temporary period. However, if such an individual were to perform professional functions at the Department on more than a short-term basis, the legal basis seems uncertain at best. Cf. Letter of Assistant Attorney General Robert A. Zarnoch to William S. Ratchford, II (February 23, 1994) (concluding that Baltimore City employee working at the State Department of Human Resources could not serve in high level position in that department under statutory language that distinguished between "assistants" and "professional consultants" and only provided for designation of "assistants" to be in charge of area of responsibility).
 III Conclusion
In our opinion, MSDE may enter into "loaned educator" contracts with local school systems to obtain the services of employees of those school systems on a temporary basis. If a loaned *Page 110 
educator is to work for MSDE for more than a brief period of time, the individual should become a State employee in the State Personnel Management System.
Douglas F. Gansler
Attorney General
Robert N. McDonald
Chief Counsel
Opinions and Advice
[1] In the Auditor's view, the inclusion of these payments in contractual services provides less complete information in the budget process concerning staffing at the Department.
[2] Chapter 1000, Laws of Maryland 1978.
[3] Chapter 566, Laws of Maryland 1984.
[4] Chapter 10, Laws of Maryland 1993; see also Secretary v. Bender,44 Md. App. 714, 715, 411 A.2d 107 (1980), aff'd, 290 Md. 345 (1981) (under prior Merit System, all positions were in classified service unless specifically excepted by law).
[5] Chapter 318, Laws of Maryland 1963.
[6] See administrative history annotation to COMAR 13A.07.02.
[7] We understand that the Auditor has questioned whether particular loaned educator contracts comply with the requirements of this regulation. In this opinion, we address only the general question of the validity of loaned educator contracts.
[8] That section became ED § 2-104. See Part II.D.2 of this opinion, below.
[9] It reads:
 (a) For the purpose of establishing compensation rates and the basic rates for vacation and sick leave credit earnings, all professional personnel who previously were employed by a county school system or the public library system in this State and who are appointed to positions in the Department shall be given credit as employees of the Department for the years of service as employees of the county school system or public library system from which they transferred.
 (b) For the purpose of establishing vacation and sick leave credit earnings, this section applies to all professional personnel employed by the Department before July 1, 1972.
Subsection (b) was added to the statute in 1974, presumably to ensure that a 1972 amendment that had broadened the description of applicable employees would apply retroactively. See Chapter 424, Laws of Maryland 1974; Chapter 551, Laws of Maryland 1972. See generally Letter from Special Assistant Attorney General Malcolm Kitt to Dr. Quentin L. Earhart, Deputy State Superintendent (April 20, 1976).
[10] The General Assembly recently confirmed that it views "loaned educator" contracts as a temporary vehicle for special projects and not a means for creating and filling positions on a long term basis. In the budget bill for Fiscal Year 2010, the Legislature stated that "it is the intent of the General Assembly that the [MSDE] practice of entering into contracts with local education agencies allowing local personnel to provide services to the State while remaining on local payroll be used in special, short-term projects, where local talent is a necessity." Chapter 484, Item ROOA01.01, Laws of Maryland 2009. The Legislature also required MSDE to provide a report later this year on the number of loaned educator contracts and any conversion of individuals working under those contracts to regular State positions. Id. at 138. Finally, it required MSDE to notify the legislative budget committees in advance of any new loaned educator contracts. Id.
[11] See In re Anthony R., 362 Md. 51, 59-61, 763 A.2d 136 (2000).
[12] See e.g., MSBA v. Frank, 272 Md. 528, 533, 325 A.2d 718 (1974);Cornfeld v. State Board of Physicians, 174 Md. App. 456, 483,921 A.2d 893 (2007).
[13] The 1993 amendment added the clause "who shall be in the unclassified service of the State Personnel Management System." Chapter 22, Laws of Maryland 1993. Four years later, the phrase "unclassified service" was replaced by "executive service, management service, or special appointments." Chapter 743, Laws of Maryland 1997. Likewise, the 1997 amendment was part of that year's corrective bill and "not intended to make substantive changes." Letter to Governor Parris N. Glendening from Attorney General J. Joseph Curran, Jr., concerning House Bill 1414 (May 15, 1997).
[14] The 1994 law that added this dismissal provision was a departmental bill. While not determinative of the present issue, the MSDE testimony on the bill stated that, under the bill, 129 employees could be dismissed at the pleasure of the State Board and State Superintendent and that "all other professional assistants would be removed in accordance with the State personnel management system. . . ." Testimony of Assistant Superintendent Raymond H. Brown concerning Senate Bill 105 (January 19, 1994).
[15] By contrast, a recess appointment to a vacant cabinet position does not serve in an "acting" capacity but, pursuant to the State Constitution, occupies the position until the Senate has an opportunity decide whether to confirm the appointee. Maryland Constitution, Article II, § 11. *Page 111