MONSANTO COMPANY, a Corporation of the State of Delaware, Plaintiff,

v.

AETNA CASUALTY AND SURETY COMPANY, et al., Defendants.

Civ. A. No. 88C-JA-118.

Superior Court of Delaware, New Castle County.

Submitted: July 19, 1988.
Decided: May 22, 1989.

Richard E. Poole, Richard L. Horwitz, and Kathleen T. Furey, of Potter, Anderson & Corroon, and Jerold Oshinsky, and Patricia A. Van Dyke, of Anderson, Baker, Kill & Olick, Washington, D.C., for plaintiff Monsanto Co.

Richard K. Herrmann, of Handelman & Murdoch and Peter I. Sheft, and Marjorie H. Mintzer, of Sheft, Wright & Sweeney, New York City, for defendant American Centennial Ins. Co.

Henry E. Gallagher, Jr., of Connolly, Bove, Lodge & Hutz and James Lewis Griffith, and James W. Christie, of Griffith & Burr, P.C., Philadelphia, Pa., for defendant C.E. Heath Compensation and Liability Ins. Co.

James W. Semple, of Morris, James, Hitchens & Williams, and James K.

O'Brien, and Elizabeth A. Downey, of Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C., Southfield, Mich., for defendant Intern. Ins. Co.

Elizabeth B. Sandza, of LeBoeuf, Lamb, Leiby & Macrae, Washington, D.C., for defendants Nat. Ins. Co. and Hudson Ins. Co.

Robert L. Ciociola, and Irene A. Sullivan, of Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant North Star Reinsurance Corp.

MARTIN, Judge.

This is the Court's decision on defendants' motions to dismiss on various jurisdictional grounds. For the reasons that follow, these motions are denied.

On January 20, 1988 Monsanto Company ("Monsanto") filed this comprehensive action seeking a declaratory judgment to determine its rights and the obligations of 38 insurance companies under primary and excess environmental liability insurance policies sold to Monsanto, in connection with environmental actions against Monsanto throughout the Country.

Monsanto is a Delaware corporation organized in 1933. Monsanto, an industrial company, manufactures chemical and agricultural products, pharmaceuticals, industrial process controls and consumer products at sites located throughout the United States.

The 38 insurance companies sold Monsanto liability insurance from the late 1930's through April 1, 1986. The insurance companies have separate policies with Monsanto, and each has its own defense to Monsanto's hazardous waste site claims made pursuant to those policies.

Monsanto purchased the insurance policies to protect its business activities. Monsanto's insurance program consists of a primary policy and numerous layers of excess policies to cover liability and defense costs expended after the primary coverage is exhausted. Monsanto's first layer excess policy, which provides broad coverage, is known as the umbrella policy.

The United States Environmental Protection Agency, state regulatory authorities and private third parties claim that certain materials used and/or generated by Monsanto have contaminated certain locations throughout the United States ("the Sites"). These parties have commenced actions against Monsanto relating to alleged ground water, surface water and soil contamination at the Sites, ("the Environmental Actions"). Currently, these claims pending against Monsanto involve 44 sites.

According to Monsanto, its liability policies require the defendant insurance companies to investigate, defend and indemnify Monsanto against a broad range of liability which includes the liability incurred in connection with the Environmental Actions.

Allegedly, Monsanto sought defense and indemnification for these claims by giving notice of such claims to some of the defendants. Some of the defendants have provided or paid for a defense of Monsanto, however they have done so under reservations of rights.

Allegedly, some insurance companies have refused to honor in full their obligations to defend and indemnify Monsanto in the Environmental Actions. Monsanto claims the insurance companies have breached their contracts by refusing to honor their obligations. Therefore, Monsanto filed this action seeking damages for breach of contract and a declaration of the rights of the parties under Monsanto's insurance policies.

Numerous defendants now move to dismiss the claims against them on various jurisdictional grounds. Defendants North Star Reinsurance Company, American Centennial Insurance Company and Hudson Insurance Company move to dismiss for lack of justiciability.[1] Defendant C.E. Heath

---

1. The following defendants adopted the North Star brief: Aetna Casualty and Surety Company, Allstate Insurance Company, Appalachian Insurance Company, Columbia Casualty Company, Fireman's Fund Insurance Company, Hartford Accident and Indemnity Company, Home Insurance Company, International Insurance Company, National Casualty Company, Northwestern National Insurance Company, Protective National Insurance Company of Omaha and Unigard Security Insurance Company.

Compensation and Liability Company (C.E. Heath) moves to dismiss for lack of justiciability and failure to join indispensable parties. Defendant International Insurance Company moves to dismiss for failure to state a claim upon which relief can be granted or in the alternative for a more definite statement.

The Court will address these justiciability motions in the following order: I. failure to join indispensable parties; II. failure to state a claim/more definite statement; and III. lack of justiciability.

I. Failure to Join Indispensable Parties

Defendant, C.E. Heath argues that since Monsanto has been designated as a responding party in various administrative actions in which it is alleged that Monsanto is or may be responsible for environmental hazards allegedly existing at various sites throughout the U.S., there are a number of individuals and administrative agency claimants in these underlying actions whose interests will be affected by any decision this Court makes concerning the existence or non-existence of insurance coverage for these claims.

C.E. Heath's claim is based on 10 *Del.C.* § 6511 which states;

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding ...

C.E. Heath argues that Courts have been extremely sensitive to this requirement, realizing that a declaratory judgment in any case may well affect the interests of persons who are not parties to the action without affording these people an opportunity to be heard.[2]

In *Vale Chemical Co. v. Hartford Accident and Indemnity Company*, 512 Pa.

290, 516 A.2d 684 (1986) the Pennsylvania Supreme Court addressed the question of joinder of an underlying claimant in a declaratory judgment action brought by an insured to determine whether its insurers had a duty to defend and indemnify it in connection with an underlying products liability action. The insured, a chemical company, had been sued by the plaintiff in the underlying action who claimed that she suffered from cancer as a result of her mother's use of a drug, DES, which was manufactured by Vale, during the time she was pregnant with plaintiff. Vale then brought a declaratory judgment action to determine whether the insurance policies issued by Hartford and others provided coverage for the underlying action. The Pennslyvania Supreme Court dismissed the case, holding that the failure to join the plaintiff in the underlying action was fatal error.

The Court in *Vale* based its ruling on its interpretation of 42 Pa.C.S. § 7540(a), which is similar to 10 *Del.C.* § 6511. 42 Pa.C.S. § 7540(a) states;

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

The Court in *Vale* held that the plaintiff in the underlying case had a clear interest in seeing that the insurance companies pay any judgment against its insured.[3]

Thus, the argument follows that to allow this action to proceed without joinder of the claimants in the underlying matters would not only be in direct contravention of 10 *Del.C.* § 6511, but would be fundamentally unfair to those non-joined parties whose interests will be affected by this Court's rulings.

However, Monsanto argues that C.E. Heath's motion lacks merit because the un-

---

**2.** *See, Secretary, Maryland Department of Personnel v. Bender,* 44 Md.App. 714, 411 A.2d 107 (Ct. of Special Appeals 1980), where the Court determined that state employees' interests could be affected by a declaratory judgment action challenging the validity of their job classification even though the state legislature has passed subsequent legislation guaranteeing their jobs. Therefore, the Court held that they should have

been joined as parties in the declaratory judgment action, because the Maryland declaratory judgment statute required the joinder of parties with "any" interest which would be affected by the declaration.

**3.** *Vale, supra,* 516 A.2d at 686–687.

derlying claimants which C.E. Heath refers to have no cognizable interests and even if they did, any interest whether for or against coverage will be adequately represented by the parties. *See, Mid–Centre County Auth. v. Township of Boggs, et al.,* 34 Pa.Cmwlth. 494, 384 A.2d 1008, 1012 (1978), in which an absent party's "interest" was held to be indirect and therefore not a legal interest that would require joinder. In *Mid–Centre,* the absent party's interest was in determining which of the parties to the declaratory judgment action would be required to comply with its regulations.[4] Here the underlying claimants' interest is knowing whether Monsanto or its insurance companies would be the ultimate party responsible for payment of any damages determined to be owed by Monsanto. Those parties who would be liable on the insurance contract are party to this suit and all cognizable interests in this action are represented.

However, in Delaware, established law allows an action to continue if an absent party's alleged interest is fully represented in the law suit.[5] Monsanto argues even if the underlying claimants had a cognizable interest in this action, the Court need not dismiss this case for lack of indispensable parties because their interests are adequately represented. Underlying claimants interests would be similar to Monsanto's goals. Given the magnitude of this case and the possible pecuniary loss Monsanto may suffer, Monsanto is vigorously pursuing its right to maximum coverage. Therefore, the underlying claimants will be fully represented by Monsanto. Under similar circumstances, Delaware Courts have repeatedly rejected motions to dismiss on indispensable party grounds.[6]

■ After consideration of the applicable Delaware case law, this Court finds that although the underlying claimants have some interest in the outcome of this litigation, it is not feasible to join them. The underlying claimants' interests are adequately represented by the parties in this law suit and Delaware law does not require joinder where a party's interests are represented. Therefore, this case should not be dismissed for failure to join indispensable parties.

When a claimant seeks declaratory judgment 10 *Del.C.* § 6511 requires joinder of all parties who have or claim any interest which would be affected by the declaration sought.

Superior Court Rule 19 sets forth the requirements for joinder of a party;

a person who is subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the Court shall order that he be made a party.

"Under either of these circumstances, the person must be joined under 19(a), if feasible."[7] Where joinder is not feasible, Rule 19(b) set out the factors the Court must weigh to determine whether the action should proceed among the parties before it, or should be dismissed.

19(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)–(2) hereof

4. *Mid–Centre, supra,* 384 A.2d at 1012.

5. *Moran v. Household Intern., Inc.,* Del.Ch., 490 A.2d 1059, *aff'd,* Del.Supr., 500 A.2d 1346 (1985).

6. *See, Flerlage v. KDI,* Del.Ch., C.A. No. 8007, at 16–17, 1986 WL 1397, Hartnett, V.C. (Jan. 29, 1986); *Brinah v. Tele Star, Inc.,* Del.Ch., C.A. No. 8118, Berger, V.C. (Sept. 3, 1985); *Moran v. Household Int'l, Inc., supra.*

7. *Moran v. Household Int'l, Inc., supra,* at 1072 (1985) (referring to the Chancery Court Rule 19 which is identical in substance to Superior Court Rule 19.)

cannot be made a party, the Court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the Court include: First, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

"If it is determined through the evaluation of these four factors that the action should not proceed, the person is thus deemed indispensable and the action will be dismissed." [8]

This Court must first determine whether the underlying claimants are parties to be joined if feasible, under Rule 19(a). Neither Monsanto nor the excess carriers argue whether this suit can result in complete relief for the parties in the absence of the underlying claimants. This is an insurance coverage action where the plaintiff seeks a declaration of the rights and obligations of the contracting parties under the insurance contracts involved in this case. All of the parties to the insurance contracts are represented in this suit. This Court can render a complete resolution of the issues involved in this suit because all of the parties to the insurance contracts are represented. Thus, the lack of the claimants involvement in this suit would not render judgment impossible. Therefore, this Court can render complete relief, as far as the claims asserted in this matter, without joining the underlying claimants.

The Court must now decide whether the underlying claimants have an interest in this suit in which non-joinder would either impede an ability to protect that interest or, subject present parties to a substantial

risk of double, multiple or otherwise inconsistent obligations by reason of the claimed interest. The excess carriers claim that the underlying claimants have an interest in this suit because they will benefit from any recovery Monsanto receives. If the Court allowed this suit to go forward without joining the claimants it would deprive these claimants of being heard. They could not pursue their interests. Alternatively, the claimants could subject the insurance carriers to other law suits where another Court might rule inconsistently with this Court.

Monsanto argues that the underlying claimants have no cognizable interest. This argument is ambiguous. Clearly the claimants have some interest in the outcome of this litigation. If recovery is denied Monsanto would be responsible for all of its liability. Monsanto could declare bankruptcy and the claimants would have no relief. Non-joinder would either fail to protect the claimants' interest or subject the insurance carriers to more litigation.

However, due to the enormity of this case, joining all underlying claimants is not feasible. The toxic waste damages at the forty four (44) sites across the Country, and the numerous claims filed, necessarily involves a large number of underlying claimants. Surely to join all of these parties would be obstructive and probably defeat the ends of justice. Although the next step would be to consider Rule 19(b), Delaware case law recognizes an exception to joinder in a case such as this. *See, Moran v. Household, supra*, at 1073–1074; *Bay Newfoundland Co. v. Wilson & Co.*, Del. Ch., 11 A.2d 278, 281 (1940).

In the alternative, Monsanto argues that, even if the claimants have an interest, the parties in this case will adequately represent those interests. The magnitude of this case, including allegedly extensive damages and high valued claims, have all parties aggressively litigating this suit. As past pleadings have shown, no stone is being left unturned. Any interests that the claimants might have whether for or

---

8. *Moran v. Household, supra* at 1073.

against recovery are represented. Joinder is not required when a person's interests are fully protected by the parties already present in the case. *See, Moran v. Household, supra,* at 1073. Therefore, the Court need not join the claimants. However, some Delaware cases have required joinder so that the claimants would at least have an opportunity to be heard. However, *Moran v. Household, supra,* sets forth a general exception to the joinder requirement. "Where the interested parties are so numerous that to join them would tend to obstruct and probably even defeat the ends of justice",[9] joinder is not required. The exception applies in this case. Therefore, C.E. Heath's motion is denied.

## II. Failure to State a Claim/More Definite Statement

Defendant International Insurance Company, (IIC), moves for dismissal of Monsanto's claim for failure to state a claim upon which relief can be granted or for a more definite statement of Monsanto's cause of action. IIC argues that a more definite statement of Monsanto's allegations is necessary for IIC to respond fully without proposing costly and unnecessary discovery from Monsanto to determine the basic elements of its claims.

Monsanto counters that the purpose of the complaint is to give notice. Monsanto alleges that it has satisfied the minimum notice pleading standard, i.e., fairly notifying the opposing party of the nature of the claim. *See, United States v. Board of Harbor Commissioners,* 73 F.R.D. 460, 462 (D.Del.1977). The information that IIC seeks is not required in a complaint.

Monsanto points out that the trend is toward narrowing the requirements for a more definite statement and to require a party to look to discovery as the means for crystallizing the intentions of the pleader rather than to require pleading precision. *See, Hendix v. McGraw–Edison Co.,* Del. Super., C.A. No. 80C–JL–8, Taylor, Judge (Sept. 22, 1981) slip op. at 1.

However, the Court need not decide this issue because it is moot due to the scheduling order entered in this case on January 31, 1989. The scheduling order required Monsanto to provide for the defendants by March 31, 1989 a more detailed description of each actual, threatened or potential liability claim of which coverage is or may be sought in this action, including: a. the identity of claimant, the amount of the claim, and the identity and location of the waste site or other site, facility, or property involved; b. a brief description of the nature of the alleged bodily injury, property damage, clean-up costs, or other loss, damage, or injury alleged; and c. the identity of each insurer Monsanto notified of the claim, and the date and manner of notice.

## III. Lack of Justiciability

■ The Court turns now to the Excess Carriers[10] motion to dismiss Monsanto's action for declaratory judgment, at least as to the excess insurance policies, because these claims are not ripe for adjudication. The Delaware law covering this issue of ripeness is the Declaratory Judgment Act as amended in 1981. The Declaratory Judgment Act reads in pertinent part as follows:

10 *Del.C.* § 6501. Power of Courts; form and effect of declaration.

Except where the Constitution of this State provides otherwise, Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed....[11]

The current version of the act was adopted from the Uniform Declaratory Judgment Act. It was enacted not to change the substantive law of declaratory judgment, but to give the Courts of this state the benefit of the case law of the majority of jurisdictions which have also adopted the Uniform Declaratory Judgment Act.

---

9. *Moran v. Household, supra,* at 1073–1074 (quoting *Bay Newfoundland Co. v. Wilson & Co., supra,* at 281).

10. "Excess Carriers" refers to those insurance companies mentioned in footnote 1 who filed a motion to dismiss for lack of justiciability.

11. 10 *Del.C.* § 6501.

Therefore, while the current act does not explicitly require an "actual controversy" or "ripeness" before this Court can act on a request for declaratory judgment, these requirements remain. Previous case law set out the requirements for bringing a request for declaratory judgment under the previous declaratory judgment act and therefore must be followed.[12] Also, case law of other states following the Uniform Act as well as the Federal Declaratory Judgment Act recognize these requirements.

■ The prerequisites necessary for a controversy to warrant declaratory relief are set forth in *Playtex, supra,* at 273–74, quoting *Marshall v. Hill,* Del.Super., 93 A.2d 524, 525 (1952): (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claims; (3) the controversy must be between parties where interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial declaration.

■ The Excess Carriers assert that the prerequisite of ripeness is not met by Monsanto. When deciding whether an issue is ripe for adjudication the Court must do a balancing test. The Court must use its judicial discretion based on the factors of each case to weigh the interests of an early resolution of the controversy, judicial economy and legal stability which, when taken together, may in some cases require dismissal of the declaratory judgment action.[13] The factors to be considered in a ripeness analysis are (1) a practical evaluation of the legitimate interests of the plaintiff in a prompt resolution of the question presented; (2) the hardship that further delay may threaten; (3) the prospect of future factual development that might affect the determination made; (4) the need to conserve scarce resources; and (5) a due respect for identifiable policies of law touching upon the subject matter in dispute.[14]

The Excess Carriers argue that the present action is an attempt by Monsanto to have this Court determine legal obligations which may never mature. Some courts who have had similar situations have dismissed the claims against the excess carriers. *See, Borg–Warner Corporation v. Liberty Mutual Insurance Co., et al.,* (Supreme Court New York, Index Number 88–539, RSI Number 88–0389); *Schick, Inc. v. ACTWU, supra,* (where case was dismissed because it did not involve a present controversy); *Ackerman v. Stemerman,* Del.Supr., 201 A.2d 173 (1964).

■ The Excess Carriers allege that they are under no present obligation to pay benefits under the policies to Monsanto. Monsanto must first exhaust its underlying insurance policies before the excess policies are triggered. In some cases excess policies will not trigger until the underlying policies have paid $58 million. Monsanto has not offered proof that the underlying policies will be exhausted in any given year triggering the high level excess policies. Also the argument proceeds, Monsanto will not suffer any harm from dismissing the excess carriers because Monsanto has not made expenditures beyond the underlying insurance coverage. Furthermore, the Excess Carriers argue that if there is a potential to trigger the excess level policies, it is so remote that the Court should exercise its discretionary power and refuse to decide this action.[15] Therefore, it would follow

**12.** *See, Schick v. Amalgamated Clothing and Textile Workers Union,* Del.Ch., 533 A.2d 1235, 1238 (1987). *See, also, Playtex Family Products, Inc. v. St. Paul Surplus Lines Insurance Co., et al.* Del.Ch., 564 A.2d 681 (1989).

**13.** *See, Schick, Inc. v. ACTWU, supra,* at 1238 footnote 2 and the cases cited therein.

**14.** *See, Schick, Inc. v. ACTWU, supra; Bank of Delaware v. Allstate Insurance Co.,* Del.Super., 448 A.2d 231 (1982).

**15.** In *Employers Insurance of Wausau v. McGraw Edison Co.,* No. K86–48 CA, 1987 WL 58061, Gibsen, J. (W.D.Mich. Aug. 8, 1987), the Court stated the issue concerning ripeness under declaratory judgment as, "not whether [the insured] maybe entitled to relief at anytime on its causes of action against the various insurers,

that a declaratory judgment will not have an immediate impact on Monsanto with respect to the excess policy levels. Thus, any potential controversy between Monsanto and the Excess Carriers has not yet matured to the point at which judicial intervention is appropriate. If the Court finds these allegations accurate, it would not be in the best interest of judicial economy to proceed upon a claim for declaratory judgment against the Excess Carriers where the actual controversy is hypothetical at best.

However, Monsanto points out that in insurance coverage cases present obligation is not necessary for a declaratory judgment action.[16] A minimal case in controversy is satisfied where insurance companies dispute their coverage obligations.[17]

However, the Court must be sure that it does not construct hypothetical factual situations on which it makes a finding, putting forth an advisory opinion. The matter would clearly not be ripe for adjudication in that situation. *See, Rollins International, Inc. v. International Hydronics Corp.,* Del.Supr., 303 A.2d 660 (1973); 10 *Del.C.* § 6506.

Monsanto argues that a Declaratory Judgment action against an excess carrier is ripe where the policy holder's liability for the underlying claims potentially exceeds its primary coverage in any given year.[18] Monsanto states that it has already expended sufficient funds to substantiate the ripeness of this action. Moreover, Monsanto is exposed to sufficient demonstrable liability that plainly implicates the Excess Carriers coverage. In addition, for a number of years Monsanto's primary coverage is exhausted. Arguably it follows that the exhaustion of portions of Monsanto's coverage, coupled with Monsanto's involvement at a number of Superfund sites and its potential liability for activities that span a number of years make this action a real, not hypothetical, action ripe for adjudication as to all of the excess carriers involved in this suit.

The Court notes that after the motion *sub justice* was filed Monsanto provided to the Court a description of the 44 sites involved in this lawsuit. Monsanto also provided a description of the alleged injuries at each site and the approximate amount of damages for each claim brought.

Although absolute proof that the Excess Carriers policies will be triggered is by no means required by this Court before jurisdiction under the Declaratory Judgment Act exists,[19] Monsanto has provided a sufficient basis for this Court to conclude that the Excess Carriers' policies will probably be triggered in this lawsuit. Monsanto alleges that for the period ending December 31, 1987 it has paid damages in the amount of $49,176,000.00.[20] This amount probably reaches the threshold of some of the excess policies. If the Court were to dismiss the Excess Carriers from this claim Monsanto would suffer harm because it could not

---

rather, whether this lawsuit presents an actual case or controversy within the scope of the Declaratory Judgment Act, 28 USC § 2201." The Court dismissed those excess carriers where the plaintiffs alleged no more than a slight possibility that coverage may be triggered at some time in the distant future, if at all. This would be improper, given the facts and circumstances of this case.

**16.** *See, Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 242, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); 20 J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 11353 at 314 (1980).

**17.** *Aetna Life Ins. Co. v. Haworth, supra,* at 242, 57 S.Ct. at 464; *Harleysville Mutual Cas. Ins. Co. v. Carroll,* Del.Super., 123 A.2d 128 (1956).

**18.** *Eli Lilly and Co. v. Home Ins. Co.,* No. 82–0669, slip op. at 3–4 (D.D.C. Sept. 30, 1982);

*Carey Canada, Inc. v. California Union Ins. Co.,* 1984 Fire & Casualty Cases (CCH) 65 (D.D.C. 1984); *Lumbermens Mut. Casualty Co. v. Connecticut Bank,* No. B–84–213 (D.Conn. Sept. 30 1985); *Diamond Shamrock Chems. Co. v. Aetna Casualty & Sur. Co.,* N.J.Super., No. C–3939–84 (Oct. 2, 1987) (Transcript of Proceedings); *Textron, Inc. v. Aetna,* R.I.Super., C.A. 87–3497 (April 8, 1988) (Transcript of Proceedings).

**19.** *Id.*

**20.** Plaintiff's consolidated surreply and answering brief in opposition to Defendants' motions to dismiss for forum non conveniens and jurisdictional grounds at 34, *Monsanto Company v. Aetna Casulty and Surety Company, et al.,* Del. Super., (C.A. No. 88C–JA–118) Martin, Judge, (filed January 21, 1988).

seek immediate compensation from the Excess Carriers for money that it has already expended.

The cases that the Excess Carriers cite would clearly deny a motion to dismiss given the facts of this case. In those cases, a dismissal was granted only where the allegations did not show that the claim asserted against the defendant could mature or where the claims were highly unlikely to mature.

However, in this case, Monsanto's allegations and the numerous high valued claims that this lawsuit encompasses will probably trigger the Excess Carriers policies. Therefore, the Court finds a case in controversy that is ripe for adjudication under the Declaratory Judgment Act.

Conclusion

Pursuant to this Court's analysis, the underlying claimants are dispensable, Monsanto has provided enough information to clarify its pleading and, this case is ripe for adjudication. Therefore, Defendants' motions to dismiss on justiciability grounds are denied.

IT IS SO ORDERED.