531 A.2d 1298

STATE ADMINISTRATIVE BOARD OF ELECTION LAWS

v.

Edwin S. BILLHIMER.

No. 131, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Oct. 9, 1987.

Carmen M. Shepard, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Ronald H. Jarashow (William A. Franch, on the brief), Annapolis, for appellee.

Argued before GILBERT, C.J., and BLOOM and ROSALYN B. BELL, JJ.

GILBERT, Chief Judge.

Andrew Jackson, the seventh President of the United States, is quoted as having said:

> "The duties of all public offices are, or at least admit of being made, so plain and simple that men of intelligence may readily qualify themselves for their performance, and I cannot but believe that more is lost by a long continuance in office than is generally gained by their experience." [1]

With that statement President Jackson justified his philosophy of "to the victor belong the spoils." [2] This appeal tests whether the position of Deputy State Election Administrator is part of the "spoils" of election. Phrased less bluntly: Is the office of the Deputy State Election Administrator a classified or non-classified position?

### The Facts

Edwin Billhimer was employed by the State Administrative Board of Election Laws (SABEL) on August 11, 1971. His position at that time was "unclassified." Approximately five months later, January 15, 1972, he took an examination for the position of "Chief Clerk," a job that would

---

1. Prof. Fremont P. Wirth, *The Development of America* (1941 Ed.), pp. 276–77.

2. William Learned Marcy (1786–1857), Governor of New York speech in the United States Senate in 1837. The full quote is: "They see nothing wrong in the rule that to the victor belong the spoils of the enemy."

qualify him for State merit system status.[3] Billhimer received a "qualifying" rating as a result of the examination, but he was not placed on an eligibility list, a point repeatedly stressed by the State in its brief.[4]

Six years later, February 8, 1978, Mr. Billhimer was promoted from the position of "Supervisor of Voting Machines" to "Deputy Administrator." The Deputy Administrator's position was intended to be a new title, rather than a new job.[5] The creation of the title was the result of a survey conducted by the Maryland State Department of Personnel at the request of the Administrator of SABEL. In its *draft proposal* the survey team recommended the designation of one of the existing positions as "Deputy Administrator," so as to remedy what the team believed was a serious weakness in the organizational structure of SABEL. The survey team opined that there was a need for someone with the authority to take charge of the routine day-to-day decisions in the administrator's absence. The draft report specifically stated that because of "the sensitive nature of such a position placement in the unclassified service is also warranted." When Billhimer was designated as the Deputy Administrator, he was assigned an unclassified position code number.[6]

---

3. Billhimer testified that the examination was administered in order to comply with a new law. The requirements of Md.Ann.Code art. 64A, § 9G coincide with the date of his examination.

4. The point is immaterial if the examination was in fact taken in order to comply with the then new § 9G of art. 64A. The record before us does not lend itself to any other logical explanation for the administration of the examination. Under § 9G, "any incumbent employee who passes the examination shall be retained in his position." The eligibility list requirement was expressly stricken from the proposed legislation. *See* 1971 Maryland Laws, Ch. 351. *See also* Md. Senate Journals, 1971, at 2035.

5. The State relies heavily on the fact that Billhimer was not subjected to a new examination or competition. Neither, however, is necessarily required under the Department of Personnel rules. *See D'Anna v. Secretary of Personnel,* 47 Md.App. 180, 422 A.2d 50 (1980).

6. A "code number" indicates title and classification.

On December 10, 1982, SABEL, through its then Administrator, mailed Billhimer a letter terminating him as Deputy Administrator of SABEL, effective as of December 31, 1982. No reason for the termination was stated in the letter. Billhimer was, however, notified of his right to appeal pursuant to Personnel C.O.M.A.R. 06.01.01.60. An appeal under that particular rule is limited to an inquiry into whether illegal or unconstitutional reasons exist for the termination of employment.

Billhimer asserted that he was a classified employee and could not be terminated without cause. He appealed to the Secretary of Personnel. That agency sustained the Administrator's position. Eventually, after exhausting his administrative appeal, Billhimer sought redress in the Circuit Court for Anne Arundel County. Judge James C. Cawood remanded the matter to the Secretary of Personnel for further proceedings. At the conclusion of those proceedings, Billhimer again sought judicial review. After a hearing, Judge Cawood reversed the decision of the Department of Personnel. The effect of that decision is to continue Billhimer as a state employee.

Aggrieved by Judge Cawood's decision, the State has appealed. It initially presented us with two issues, namely:

"1. Whether the determination of the Department of Personnel that the former Deputy Administrator for the State Election Board was properly terminated as an unclassified employee is supported by substantial evidence?

2. Whether the court below erred in substituting its judgment for the judgment of the agency?"

In its reply brief the State raised an additional issue:

"3. Whether appellee should benefit from his delay in challenging his employment status?"

### The Law

The resolution of this case requires an understanding of the State Merit System. Little would be gained from refer-

ring to "classified" or "unclassified" employees unless we first define and explain the terms. Therefore, we shall briefly sketch the State Merit System.

A "classified service position" is "any office or place of employment in the classified service." Md.Ann.Code, art. 64A, § 1 (1957). The "classified service" includes *"all* offices of profit or trust and all places of employment, whether permanent or temporary, in the service of any State officer, department, commission, *board,* or institution, other than those in the military forces, and *other than those enumerated in § 3* of this article." *Id.* (emphasis added).

That section, in pertinent part, provides an exemption from classified service for

"[a]ll positions in State offices, boards, departments and institutions which the Secretary [of Personnel] may determine, with the approval of the Governor, require medical, engineering, scientific, educational or expert training and qualifications."

Section 3(13).

To qualify for a classified position, a candidate must pass an examination, Md.Ann.Code art. 64A, § 18, be included in a list of persons eligible for appointment, and compete with the others on the list for the purpose of filling any vacancy. *Id.* at § 22. A classified employee may be removed only for cause, and the employee has a right to challenge the sufficiency of the cause. *Id.* at § 33.

Unclassified employees, on the other hand, are not subject to the merit system. They need not submit to qualifying examinations, nor need they compete with other listed candidates. They may, however, be removed "at will" unless the termination is illegal or unconstitutional. C.O.M. A.R. 06.01.01.60A.

SABEL is charged specifically with supervising election practices throughout the state. *County Council v. Montgomery Ass'n,* 274 Md. 52, 333 A.2d 596 (1975). It was

created by 1969 Md.Laws, Ch. 555. That chapter added § 1A–1 to Md.Ann.Code art. 33, the State Election Code.

One of the avowed purposes of § 1A–1 was to create the office of State Administrator of Election Laws and to spell out his "powers, ... duties, ... tenure, salary, and office staff." Notwithstanding the avowed purposes, there is no reference in the body of the statute itself to the Administrator's "office staff." Indeed, the only reference whatsoever to "office" is found in Md.Ann.Code art. 33, § 1A–1(d) which provides: "The office [of the Administrator] shall be located in Annapolis and shall consist of employees at salaries provided in the annual State budget from time to time." The statute is silent with respect to exemption of the employees from the classified service.

In 1971 the Legislature amended both the Merit System Law and the Election Code. The purpose of the amendments was to place all continuously employed permanent employees of the boards of supervisors of elections in the various subdivisions of the State in the State's classified service and, therefore, under the jurisdiction of the Secretary of Personnel. *See* Md.Ann.Code art. 64A, § 9G and art. 33, § 2–6.

The 1971 amendment did not explicitly place SABEL employees under the classified service. It did, however, embrace within the classified system all employees of the local political subdivisions' boards of supervisors of elections, except those that specifically opted to remain in a local merit system. In any event, the Legislature did not expressly exempt the SABEL staff from the classified service or from the jurisdiction of the Department of Personnel.

The State argues that the circuit court ran afoul of the rule that a review court may not substitute its judgment for that of the Department of Personnel, if the agency's decision was supported by substantial evidence. A review of the record before us reveals that Judge Cawood reversed the agency as a "matter of law" and not on the basis of the

agency's factual findings. The judge held that the agency misconstrued and misapplied the law.

"Under, or apart from statutes, a standard of review is whether the administrative agency has acted in accordance with, or contrary to, the law. The reviewing court may correct an administrative action where the agency has either violated, misconceived, improperly construed, or failed to follow, the law. The court may also interfere where the agency has proceeded on an erroneous theory of law, or has otherwise applied the law incorrectly or committed an error of law."

73A C.J.S. *Public Administrative Law and Procedure* § 242 (1983) (footnotes omitted).

Judge Cawood found that the conclusion reached by the agency was not supported by evidence demonstrating that the statutory criteria for exemption from classified service had been satisfied.

Under the Administrative Procedure Act, Md.State Gov't Code Ann. § 10–215(g)(3), a circuit court may:

"reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

■ Indubitably, an error of law is a statutorily prescribed basis for reversing a decision of an administrative agency.

■ Recently this Court reiterated that the proper standard of review of agency action is that the administrative decision will not be disturbed on appeal if substantial evi-

dence supports the factual findings and no error of law exists. *Howard County v. Davidsonville Area Civic Ass'n, Inc.,* 72 Md.App. 19, 527 A.2d 772 (1987). In contrast to factual findings, no deference is accorded to an agency's legal conclusions once a reviewing court determines them to be erroneous. *United Parcel Service v. Comptroller,* 69 Md.App. 458, 518 A.2d 164 (1986). *See generally* 73A C.J.S. Public Administration Law and Procedure § 242 (1983). We must now determine whether the hearing judge was correct in his ruling that the agency misconstrued and misapplied the law.

■ The role of this Court, as stated in *Public Serv. Comm'n v. Balto. Gas & El.,* 273 Md. 357, 329 A.2d 691 (1974), is essentially to repeat the task performed by the circuit court. "We do not, therefore, in considering the legality and reasonableness of the ... [agency's] decision ..., accord prima facie correctness to the decree of the [circuit] court...." *Id.* In short, we do not directly review the judgment of the circuit court, but "consider whether there was substantial evidence before the ... [agency] on the record as a whole to support its ... [conclusions]." *Id.* at 362, 329 A.2d 691.

The crux of this case is statutory construction. "When engaged in ... [that pursuit], it is well settled that not only should this Court begin its investigation with the words of the statute, but we are bound by those words if their import is clear and unambiguous." *United Parcel Service v. Comptroller,* 69 Md.App. at 469, 518 A.2d 164. "The statutory language itself provides the clearest indication of the legislative intent and is thus the primary source for all statutory construction." *Id., citing Board v. Stephans,* 286 Md. 384, 408 A.2d 1017 (1979).

■ The statutory language in Md.Ann.Code art. 64A is clear and unambiguous. Under § 1 of that article *all* employees of the State are deemed "classified" unless they have been specifically exempted from that category. *See Secretary, Md. Dept. of Personnel v. Bender,* 44 Md.App.

714, 715, 411 A.2d 107, 108 (1980), *aff'd*, 290 Md. 345, 430 A.2d 66 (1981).

██ The State suggests that the "expert training and qualification" proviso of Md.Ann.Code art. 64A, § 3(13) authorizes the creation of the Deputy Administrator's job as an unclassified position. The hearing judge noted that § 3(13) established four criteria for exemptions from classified service. Those four criteria are:

"1. There must be a State position.

2. The Secretary of Personnel must determine that the position requires medical, engineering, scientific, educational or expert training and qualifications and should be unclassified.

3. The Governor must concur in that ... [determination].

4. There must be at least some indication that ... [expert] training and qualifications are required; in other words ... [the expert training and qualification provision] cannot be used as a subterfuge to defeat the system."

Our review of the record indicates that the findings on which the decision of the Department of Personnel grounded its determination were insubstantial and for the most part unrelated to the statutory mandate of § 3 of art. 64A.

The findings of fact enumerated in the arbitrator's proposed decision of February 22, 1984, were:

1) that as of the time of his employment Deputy Administrator Billhimer was "coded" in the unclassified service; "[h]e never sat for an examination, for ... [the] position nor was he selected from any State eligible list";

2) that the survey which led to the creation of the job of Deputy Administrator referred to the job as being "unclassified" because of "the sensitive nature of the position";

3) that the position was established under an "unclassified Class Code";

4) that a memo from a classification analyst made reference to a letter from the Secretary of Personnel agreeing that *all* positions in SABEL should be unclassified;

5) that when Billhimer was promoted to the Deputy's position he was neither subjected to a written examination nor was he selected from a list of eligible persons.

None of the findings satisfies the statutory requirements. Despite the shortcomings of the fact finding process, the arbitrator, in her "proposed conclusions of law" summarily declared: "Clearly, the Deputy Administrator position is one requiring definite and specific expertise."

■ What was clear to the arbitrator is far from clear to us. Not one of the "proposed findings of fact" supports that conclusion. Nothing in the "fact finding" indicates any particular "expert training or qualification" needed to fill the position of Deputy, nor do the "findings" suggest that Billhimer uniquely satisfies art. 64A, § 3(13). The statutory requirement that every personnel decision be accompanied by "findings of fact" is not sated by one-sentence conclusions. *Ocean Hideaway Condominium Ass'n v. Boardwalk Plaza Venture,* 68 Md.App. 650, 515 A.2d 485 (1986). Administrative agencies must provide reasons for their decisions. *Id.; see also Tron v. Prince George's County,* 69 Md.App. 256, 517 A.2d 113 (1986).

The State further argues that the Department of Personnel, in fact, made a finding that the Deputy Administrator position requires special expertise. That argument fails for at least two reasons: One, that a *survey team* in a *draft proposal* recommended that a position be created for someone "to take charge of the routine day-to-day decisions" is far short of the statutory requirement that a determination be made by the Secretary of Personnel that "the position requires medical, engineering, scientific, educational or expert training and qualifications." Two, the survey team recommendation was *not* a "finding" that was relied upon by the arbitrator in his decision.

The arbitrator's second order, that of January 29, 1986, which followed the remand from the circuit court, contains similar fallacies. The arbitrator's decision reaffirmed the previous decision but on a different basis. She concluded that Billhimer had always been in an "unclassified position" code series, and that, although he had taken an examination, he had never competed for the job of the Deputy position. The standard imposed by art. 64A, § 3(13) was not mentioned, much less discussed in the course of that decision.

At the hearing following the remand from the circuit court, Billhimer testified that it was his understanding that the examination that he took for the chief clerk position was to qualify him for merit system status. Aside from that testimony, the hearing focused on the coding of employment positions and the meaning of that coding. The State introduced into evidence an informal memo dated December 3, 1969:

> "Commissioner Bosz contacted the Governor's Office and it is their intention that all positions in this agency should be exempt. It was felt that the legislation creating this agency intended that this be so even though it wasn't specifically stated. Part of the functions for the new agency were formerly performed by the Secretary of State's Office. There is a feeling that this new agency is directly tied to the Executive Department which is exempt from the Merit System. The Governor had promised the new Administrator that he could employ any person he desired.
>
> We are processing the BB40's as 9000 codes in accordance with the above."

The memorandum was written "For File" by Robin J. Zee. Mr. Zee was identified in the record as being the then Director of the Division of Classification and Compensation. The memorandum was written eight years before the establishment of the position of Deputy State Election Administrator. We are not told who in the Governor's office was contacted by Commissioner Bosz (later Secretary of Person-

nel), nor who in that office expressed *"their* intention that all positions be exempt" (emphasis supplied). The only reason stated in the memo for treating SABEL employees as unclassified is the direct relationship of SABEL to the Executive Department and an alleged promise by the Governor that the "Administrator could employ persons he desired." There is no indication in the memorandum that there was a determination made that the positions in SABEL would be exempted because they required "medical, engineering, scientific, educational or expert training and qualifications." None of the grounds mentioned in the memorandum satisfies the requirements of art. 64A, § 3(13).

In *Tron v. Prince George's County,* 69 Md.App. at 270–71, 517 A.2d 113, this Court, speaking through Judge Bishop, said:

> "Not only what ... [an administrative agency] decides, but also how it decides is crucial:

> [F]indings are essential, and necessary to permit the court properly to review a decision or order, and the absence of findings precludes adequate judicial review. Findings are needed to aid a court in determining whether there is sufficient evidence to support an agency decision, and whether the facts offer a reasonable basis for the order entered, and whether it is based on a proper principle.

> . . . .

> In addition, a purpose of administrative findings is to apprise the parties with respect to the reason for the administrative action as an aid to them in deciding whether additional proceedings should be initiated and, if so, on what grounds. Thus, administrative findings have been held to be necessary to assist the parties in planning their cases for rehearing and judicial review."

We think Judge Cawood, in reversing the agency, correctly opined, "While we might permit informality in such matters, the record is ... totally devoid of anything which satisfies the statutory exemption. While we have an

aversion to bureaucratic red tape, we believe here there is no tape at all."

■ Lastly, the State asserts that Billhimer was always an unclassified employee. That fact, the State says, was shown by the personnel code numbers of his previous positions. Because Billhimer knew the code meaning, the State avers, he should not benefit from his delay in challenging his status.

The State's emphatic assertion that appellee's status is proven by his code numbers is ill founded and appears to be based on a theory of bureaucratic osmosis, *i.e.*, a gradual absorption into an unclassified status by virtue of misidentification. The issue here is not, however, what the Department of Personnel *thought* Billhimer's status was, but *how* it reached its conclusion. "The fact that a position is carried on the payroll as being in the unclassified service does not establish that classification." *Henslee v. State Personnel Board of Review,* 239 N.E.2d 121, 15 Ohio App.2d 84 (1968).

Moreover, the record is utterly devoid of any evidence that Billhimer either knew what his classification number was or that he comprehended the meaning of the classification code number. On the contrary, there is uncontroverted evidence that Billhimer passed an examination that qualified him for classified service. Irrespective of the effect the examination had or should have had on his status, Billhimer possessed some reason to believe that he was a classified employee.

Even if Billhimer knew that he was "coded" as an unclassified employee, we would still reject the State's argument. In *United Parcel Service v. Comptroller,* 69 Md.App. at 473, 518 A.2d 164, quoting from *St. Dept. of A. & T. v. Greyhound Comp.,* 271 Md. 575, 589, 320 A.2d 40, 48 (1974), we restated that the " 'unvarying construction of a law by the agency charged with its enforcement over a long period of time ... cannot override the plain meaning of the

statute or extend its provisions beyond the clear impact of the language employed.' "

One of the purposes of the Maryland merit system, Judge Lowe wrote for this Court in *Secretary, Md. Dept. of Personnel v. Bender*, 44 Md.App. 714, 715, 411 A.2d 107, 108 (1980), "is to provide standards of employment and advancement, ... intending to avoid problems inherent in political spoils systems, such as nepotism and related abuses." To the extent that the Maryland Code sets forth procedures for exempting employees from the benefits of the merit system, Billhimer is entitled to its fair and accurate application. It follows that we agree with Judge Cawood that this case must be remanded to the agency for a merits hearing.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.