861 A.2d 92

**CECIL COUNTY DEPARTMENT OF SOCIAL SERVICES**

v.

**Danny RUSSELL.**

No. 0390, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Nov. 10, 2004.

Sandra Barnes (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Appellant.

Edward Andre Richitelli, Elkton, for Appellee.

Panel: MURPHY, C.J., DEBORAH S. EYLER and SHARER, JJ.

SHARER, Judge.

The Cecil County Department of Social Services ("DSS") appeals from an order of remand by the Circuit Court for Cecil County in a case involving a finding of indicated child sexual abuse, for the purpose of entering the name of appellee, Danny Russell, on the Social Services Administration central child abuse registry, pursuant to Md.Code Ann., Family Law § 5–714 (1999 Rep. Vol. & 2001 Supp.).

An Administrative Law Judge found that the DSS had correctly found "indicated child sexual abuse" in a case in which Danny Russell, appellee, was accused of molesting his daughter's teenage friend. At issue in this appeal is whether, because the DSS had failed to include in the record before the ALJ, an audio recording of a statement made by appellee to investigators, the record was incomplete. The circuit court ruled that failure to provide the audio tape resulted in an incomplete record, and remanded the case to the Office of Administrative Hearings for the receiving of additional evidence, to wit, the audio tape.

Appellant presents for our review three questions, which restated, are:[1]

---

1. As presented in appellant's brief, the questions are:

 1. Did the circuit court err in finding that the local department was required to produce an audiotape of a police interview with Mr. Russell as part of its record and in ordering the local department to introduce that tape at a new hearing?

 2. Did substantial evidence that the appellee sexually molested his daughter's friend support the ALJ's determination that Mr. Russell was responsible for "indicated child sexual abuse"?

1. Did the circuit court err by ordering remand on the ground that the record was incomplete because of the absence of an audio recording of appellee's statement to investigators?

2. Did the circuit court err by ordering the Office of Administrative Hearings to presume, should the audio recording not be produced, that the information on the audio tape was unfavorable to the DSS?

We answer "No" to both questions, and shall affirm. For the reasons stated herein, we hold that the audio tape of Russell's joint interview with the DSS and Sheriff's Department investigators should have been included in the record provided to Russell and the Office of Administrative Hearings, and shall affirm the decision of the circuit court. Because this case will be remanded to the Office of Administrative Hearings for further proceedings, we need not reach the substantive issues presented by appellant's questions two and three.

## FACTS and PROCEDURAL HISTORY

Since we will not address the substantive and sufficiency issues raised, a brief recitation of the facts will serve the purpose of this opinion.

On March 13, 2000, the DSS received information that a 16 year-old girl, "D.," had been sexually abused by her friend's father on two separate occasions. The DSS assigned an assessor and the Sheriff's Department assigned a detective to conduct a joint investigation of the allegations.

On March 15, 2000, the investigators interviewed "D." at her school. Although reluctant to discuss the incidents, "D." eventually identified appellee as her abuser, and informed the investigators that he had touched her inappropriately on two occasions.

---

3. Did the ALJ commit any prejudicial errors of law in allowing the local department to introduce the hearsay testimony of the sixteen-year-old victim?

### The Investigation

The DSS and Sheriff's Department conducted a joint investigation of the allegations, as required by Md.Code Ann., Fam. L. § 5-706, which provides in pertinent part:

**§ 5-706. Investigation.**

(a) *In general*—Promptly after receiving a report of suspected abuse of neglect:

(1) the local department or the appropriate law enforcement agency, or both, if jointly agreed on, shall make a thorough investigation of a report of suspected abuse to protect the health, safety, and welfare of the child or children;

\* \* \*

(f) *Joint investigation procedure.*—(1) The agencies responsible for investigating reported cases of suspected sexual abuse, including the local department, the appropriate law enforcement agencies, and the local State's Attorney, shall implement a joint investigation procedure for conducting join investigations sexual abuse.

The implementation of the mandate of § 5-706(a)(1) is found in Fam. L. § 5-706(e), which provides

(e) *Written agreement to specify standard operation procedures.*—The local department, the appropriate law enforcement agencies, the State's Attorney within each county and Baltimore City, the department's office responsible for child care regulation, and the local health officer, shall enter into a written agreement that specifies standard operating procedure for the investigation and prosecution of reported cases of suspect abuse.

In compliance with that directive, an interagency agreement was developed and became operative on October 22, 1992. Among the parties to the agreement were the DSS and the Cecil County Sheriff's Department.[2]

---

2. The other agencies participating in the agreement are the Maryland State Police; the local police departments of the towns of Elkton, Chesapeake City, North East, and Rising Sun; the VA Medical Hospital; the Cecil County State's Attorney; the Child Care Administration; and

The joint investigation of the allegations against Russell included interviews of "D.," her mother, Russell, Russell's daughter, and two other witnesses. As a result of the interviews, the DSS found Russell responsible for "indicated child abuse" on August 3, 2000.[3]

## The Administrative Hearing

Russell appealed the finding of indicated sexual abuse, asserting that the finding was wrong because he had no "inappropriate contact whatsoever with the alleged victim." A contested case hearing was held by an ALJ from the Office of Administrative Hearings ("OAH") on March 30, 2001.

During the course of the hearing, testimony concerning the nature of the joint investigation, and the contents of the DSS record, were provided. The DSS successfully sought admission of the Sheriff's Department report, over Russell's objection. The DSS counsel argued:

Your Honor, this document constitutes a part of the case record that is reviewed and examined by the case worker during the course of her investigation. Quite frankly, this particular document denotes interviews that [the DSS investigator] was actually present for also. [The DSS investigator] works in combination with [the Sheriff's Department investigator], they did the investigation jointly, and this was a product of that investigation and is relevant to the matter.

The Sheriff's Department report contained the statement that "[Russell] was advised that [the] interview would be audio taped,"[4] and that report became part of the record, as did

---

the Cecil County Health Department. None of those agencies participated in the investigation at issue.

3. For reasons unexplained in the record, Russell was not prosecuted criminally.

4. The DSS investigator's summary of contacts, admitted into evidence at the administrative hearing, contains the notation: "Det. Informed b/c identified as suspect Miranda form needs to be reviewed & interview taped. Agreed." The final report submitted by the DSS investigator

Russell's written statement, taken during an interview conducted by the DSS and the Sheriff's Department. That statement remained in the custody of the Sheriff until requested by the DSS for inclusion in the record. The audio recording made of Russell's interview was not part of the record. The detective who investigated the allegations on behalf of the Sheriff's Department did not testify before the ALJ.

When cross-examined about the joint interview with Russell, the DSS investigator testified:

Q. And this was a joint investigation you said between you and the Sheriff's Department?

A. Yes.

Q. The interview with Mr. Russell was taped, was it not?

A. Correct.

Q. Do you have a copy of the tape?

A. I do not.

Q. Why not?

A. I don't have that information.

Q. But you have everything else. You've got the Sheriff's report, you have a copy of his written statement, I believe a copy of his Miranda advice.

A. Um-hum.

Q. Why don't you have the tape?

A. I don't have it.

Q. Wouldn't that be certainly the best evidence of what was said during that interview?

A. I don't have that information.

On re-direct examination, the investigator further explained:

Q. And even though the interview [with Russell] was tape recorded, audio tape recorded at the Sheriff's Department, who is in possession of those tapes?

A. The law enforcement officer.

---

noted, "Mr. [Russell] agreed to talk with us and have the interview audiotaped."

* * *

Q. Is it your understanding that the tape remains in the possession of the Sheriff's office?

A. Yes.

Q. Okay. Any has the tape ever been part of your case record?

A. No.

The ALJ ruled that the DSS's finding that Russell was responsible for "indicated child sexual abuse" was supported by credible evidence and was consistent with the law. As a result, the ALJ ruled that the DSS could "identify [Russell] as an individual responsible for indicated child sexual abuse in a central registry and in its other files." In so ruling, the ALJ made specific findings that Russell and his daughter were not credible witnesses, but that the DSS investigator and victim, "D.," were credible witnesses.[5] After receiving the ALJ's decision, appellee filed a timely petition for judicial review in the Circuit Court for Cecil County.

### The Circuit Court Proceedings

On November 16, 2001, a hearing was held in the circuit court. The court held the matter *sub curia* and issued a Memorandum and Order on March 28, 2003, remanding the case to the OAH for the development of further evidence, specifically the audio tape of the Russell interview. Although the DSS argued before the circuit court, as it does here, that the tape was not part of its record, the court found:

The local department iterates throughout the record that this was a joint investigation between DSS and the Cecil County Sheriff's Department. In fact, [the Department investigator] testified on cross that the investigation was a joint investigation between the local department and the Sheriff's Department. [The Sheriff's Department investigator's] report also states, quite explicitly, that "[t]his writer

---

5. The credibility finding was made as to "D." despite the fact that she did not testify at the administrative hearing.

will conduct a *joint investigation* with [DSS]." Consistent with both agencies' description of the investigation as a joint endeavor, the local department obtained a copy of [the Sheriff's Department's] report, Appellant's written statement, and Appellant's Miranda form from the Sheriff's Department. Both the written statement and the Miranda form were taken during the interview that was audio taped at the Sheriff's Department. The same is true of notes taken by [the detective], which were later incorporated as part of [the Sheriff's Department] report. The local department provided Appellant with copies of all of these documents as part of the redacted record, in full compliance with [COMAR] § 07.02.26.11. Moreover, the record reveals that [the detective] provided the local State's Attorney with a copy of his report as required under FL § 5–706(f)(1).

When viewed in light of FL § 5–706(f)(1), *Hutton* [*v. State*, 339 Md. 480, 663 A.2d 1289 (1995)], and *Craig* [*v. State*, 76 Md.App. 250, 544 A.2d 784 (1988)], these facts demonstrate that the investigation into "D's" allegation was clearly conducted as a joint investigation between DSS and the Cecil County Sheriff's Department. The implication of this finding in the case at bar is that the audio tape, which was made by the Sheriff's Department as part of the joint investigation into "D's" allegation, is considered to be documentary material made the [*sic*] local department, as well. The local department, however, failed to procure and provide the tape.

The local department has entirely failed to proffer a rationale as to why [the detective's] report, Appellant's statement, and the Miranda rights were collected by the local department and provided to Appellant while the audio tape was not. At the contested case hearing, the only response [the local Department investigator] could provide to the question, "[w]hy don't you have the tape?" was "I don't have it." A reading of COMAR § 07.02.26.11(A) reveals that "I don't know" is insufficient.

The audio tape was clearly documentary material made by the Sheriff's Department (and therefore made by the

local department) during the course of the joint investigation. The local department was required to provide Appellant with the redacted record, including the audio tape, not less than 14 days before the scheduled hearing. The local department, however, failed to provide the tape, in direct contravention of § 07.02.26.11(A).

\* \* \*

Here, the local department failed to produce the audio tape as required pursuant to COMAR § 07.02.26.11. Production of the audio tape was peculiarly within the power of the Sheriff's Department, which holds the only copy of the tape. Under these circumstances, it should have been natural for the local department to obtain a copy of the audio tape and to include the copy in the redacted record.

In cases such as the one at bar, where the outcome will turn on little more than which of two persons is to be believed, possible inferences, whether naturally or legally raised, become crucial. *Hayes [v. State]*, 57 Md.App. [489] at 501, 470 A.2d 1301. The ALJ's decision was entirely based upon inferences that were drawn from the testimony of witnesses and the information contained in the record. The weight that the ALJ attached to the credibility of the witnesses here was crucial to the outcome of the case. The local department's failure to enter the audio tape into the record prejudiced Appellant's defense and deprived the ALJ of information that may have influenced her decision. Accordingly, the local department's failure to provide Appellant with a copy of the tape should have raised the presumption at the contested case hearing that the information contained on the tape, if the tape were provided, would be unfavorable to the local department. In weighing the evidence, however, the ALJ failed to make this determination.

Based on the foregoing, this case is remanded for further proceedings. On remand, the local department shall obtain a copy of the audio tape from the Sheriff's department and insert the tape as part of the redacted record. In addition, the local department shall provide a copy of the audio tape to counsel for the Appellant. If, on remand, the local

department fails to provide Appellant with a copy of the audio tape, then the ALJ shall find that this omission gives rise to the presumption that the audio tape, if produced, would be unfavorable to the local department.

Finally, because this case is remanded for a new contested case hearing, the thicket of additional issues raised by Appellant in his Appeal Brief need not be addressed.

In view of the court's order of remand, it did not reach the substantive or sufficiency questions. The DSS filed a timely appeal.

## SCOPE and STANDARD of REVIEW

This Court's review of the ALJ's decision is quite narrow. The scope and standard of appellate review has been described as

essentially the same as the circuit court's scope of review. We must review the administrative decision itself. *Pub. Svce. Comm'n v. Baltimore Gas & Elec. Co.*, 273 Md. 357, 362, 329 A.2d 691 (1974); *State Election Bd. v. Billhimer*, 72 Md.App. 578, 586, 531 A.2d 1298 (1987), *rev'd on other grounds*, 314 Md. 46, 548 A.2d 819 (1988); *see also Dep't Econ. & Emp't Dev't v. Hager*, 96 Md.App. 362, 625 A.2d 342 (1993). Decisions of the OAH are subject to review under the Administrative Procedure Act ("APA"), Md.Code Ann., State Gov. Art. ("SG") § 10–222 (Supp. 1994). Subsection (h) provides that the reviewing court may—

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

 i. is unconstitutional;

 ii. exceeds the statutory authority or jurisdiction of the final decision maker;

 iii. results from an unlawful procedure;

 iv. is affected by any other error of law;

v. is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

vi. is arbitrary or capricious.

*See also, Md. State Police v. Lindsey,* 318 Md. 325, 332–34, 568 A.2d 29 (1990); *State Election Bd. v. Billhimer,* 314 Md. 46, 548 A.2d 819 (1988); *Warner v. Town of Ocean City,* 81 Md.App. 176, 567 A.2d 160 (1989); *Harford Mem'l Hosp. v. Health Svces. Cost Rev. Comm'n,* 44 Md.App. 489, 410 A.2d 22 (1980).

*Beeman v. Dept. of Health & Mental Hygiene,* 105 Md.App. 147, 154–55, 658 A.2d 1172 (1995). With respect to an administrative decision concerning child sexual abuse, this Court described the process of investigation and review:

### Administrative Classification And Reporting Standards

[The investigating local Department of Social Services] must select one of three statutorily defined dispositions for all reports of child sexual abuse: "indicated," "ruled out," or "unsubstantiated." An "indicated" case of child sexual abuse is premised on a "finding that there is credible evidence, which has not been satisfactorily refuted, that abuse, neglect, or sexual abuse did occur." Md.Code (1954, 1999 Repl. Vol., 2000 Cum. Supp.), § 5–701(k) of the Family Law Article ("FL"); COMAR 07.02.07.12A(2). Cases in which child sexual abuse is "indicated" may be included in a central registry of child abuse and neglect cases that is maintained by a local department of social services (a "local department"). *See* FL § 5–714. [The local Department's] registry is part of a network of similar registries maintained by other county social services departments throughout Maryland. *See id.* In many cases, the identity of a person whom a local department has determined was responsible for child sexual abuse may be discerned from these networked central registries.

\* \* \*

*Judicial Review Of Administrative Decision*

In a contested case proceeding to determine the validity of a local department's disposition of a particular child sexual abuse case, the administrative law judge has a fact finding role. *See C.S. v. Prince George's County Dept. of Soc. Svcs.*, 343 Md. 14, 33, 680 A.2d 470 (1996). She must "sift between potentially conflicting information provided by [the local department] and the alleged abuser to determine whether there are sufficient facts to meet the definitions of" indicated or unsubstantiated abuse. *Id.*

The ALJ's determination can be challenged in circuit court. *See* FL § 5–706.1. Appeals from the ALJ to the circuit court, and from the circuit court to the appellate courts, are governed by the same standards of review. *See Mayberry v. Anne Arundel County Bd. of Educ.*, 131 Md. App. 686, 700–01, 750 A.2d 677 (2000). "The test for determining whether the . . . findings of fact are supported by substantial evidence is whether reasoning minds could reach the same conclusion from the facts relied upon by the [agency]. . . . When an agency's decision is based on an erroneous legal conclusion, however, we will substitute our own judgment for that of the agency." *Id.*

*Montgomery County Dep't of Health & Human Servs. v. P.F.*, 137 Md.App. 243, 262–65, 768 A.2d 112 (2001) (footnote omitted).

## DISCUSSION

### *Waiver*

We shall first address the DSS's argument that appellee waived his right to challenge the exclusion of the audio tape from the administrative record because he did not file a subpoena requesting its inclusion or production before the administrative hearing. We find no merit in that argument.

Appellee argues that the record provided was incomplete because the DSS failed to include the audio tape. We conclude that Md.Code Ann., Fam. L. § 5–701(t), which we shall discuss in greater detail, *infra*, requires the inclusion of the

audio tape. Therefore, appellee was not required to request a subpoena to assure its inclusion in the administrative record. Although appellee suggests he requested the audio tape, his appeal rests on the DSS failure to include it as part of the record provided to him during the regular course of the appeal process.

■ As we have noted, appellee's counsel objected to the introduction of the Sheriff's Department report, which was based in part on the recorded interview, on the basis that the audio tape had not been provided to him or made a part of the record. While more careful preparation for the administrative hearing might have alerted appellee that the audio tape was not a part of the record provided by the DSS, that failure does not amount to a waiver. Because of the statutory mandate it was not necessary for appellee to request or subpoena the audio tape to preserve the issue for appeal.

***1. Did the circuit court err by ordering remand on the ground that the record was incomplete because of the absence of an audio recording of appellee's statement to investigators?***

Determining whether the circuit court erred by ordering a remand requires us to decide whether the audio tape ought to have been part of the DSS record.[6] If so, it was error for the DSS not to provide it, and for the ALJ not to order its inclusion in the record. The result, therefore, would be a decision based on an incomplete record, thereby requiring remand to the OAH.

---

**6.** The Court of Appeals determined in *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981), that a circuit court's remand of a matter for further administrative hearings is a final judgment, conferring the right to an appeal, ruling: "When a court remands a proceeding to an administrative agency, the matter reverts to the processes of the agency, and there is nothing further for the court to do. Such an order is an appealable final order because it terminates the judicial proceeding and denies the parties means of further prosecuting or defending their rights in the judicial proceeding." *Id.* at 6, 432 A.2d 1319. Appellee's motion to dismiss on that ground was dismissed by this Court on December 31, 2003.

As required by Fam. L. § 5–706(f), an inter-agency agreement was created, involving, among others, the Cecil County DSS and the Cecil County Sheriff's Department. The agreement details how joint investigations are to be conducted. Fam. L. § 5–706(f). The relevant agreement before us provides with respect to purpose:

> Since a multi-disciplinary, multi-agency approach is necessary and crucial for effective intervention and service to abused children and their families, a multi-agency team is established to include participation from those parties mentioned above. This approach will encourage the sharing of vital information so as to enhance their ability to protect children and to cooperatively serve their families.

> This team is created to ensure:

> 1. coordination in the investigation of reports of suspected child abuse . . .

Upon completion of an investigation, the local DSS must determine whether there is evidence that abuse has occurred. If the DSS makes a finding that the abuse has been indicated, it must notify the alleged abuser in writing. Fam. L. § 5–706.1(a). The alleged abuser may request a contested case hearing, as provided by Title 10, Subtitle 2 of the State Government Article (the Maryland Administrative Procedure Act), to dispute the determination. *Id.* at (b). The APA assures to the alleged abuser certain rights concerning the nature and form of the hearing, but allows each agency to adopt regulations concerning the procedures for an administrative appeal involving that agency. Md.Code Ann., Gov't. § 10–206. *See, e.g., C.S. v. Prince George's County Dep't of Social Servs.*, 343 Md. 14, 26, 680 A.2d 470 (1996). Pursuant to the regulations adopted by the Department of Human Resources, of which the local departments of social services are a component, only limited discovery is available. The relevant provision in the Code of Maryland Administrative Regulations ("COMAR"), provides:

The local department shall provide the appellant with the redacted record not less than 14 days before the scheduled hearing.

COMAR 07.02.26.11(A).

The definitions of "record" provided, respectively, by the General Assembly, in the Family Law Article of the Maryland Code, and the COMAR regulations of the Department of Human Resources, are slightly different. That difference, in part, gives rise to the question raised in this appeal.

The Family Law Article defines the "record" for review as:

[T]he original or any copy of any documentary material, in any form, including a report of suspected child abuse or neglect, that is made by, received by, or received from the State, a county, or a municipal corporation in the state, or any subdivision or agency concerning a case of alleged child abuse or neglect.

Md.Code Ann., Fam. L. § 5–701(t).[7] The pertinent COMAR provision, concerning the procedures for child abuse and neglect hearings, provides the following definition of "record":

[T]he original or a copy of any documentary material, in any form, including a report of alleged or suspected abuse or neglect, concerning an incident of alleged child abuse or neglect, that is made or received by a local department.

COMAR 07.02.26.02(B)(18).

The DSS argues that because it did not "make, consider, or possess the tape," it was not required to provide a copy to Russell in the redacted record mandated by COMAR 07.02.26.11.[8] The DSS argument follows this line: that its

---

7. Although the definitions section of the Family Law Article's subtitle on Child Abuse and Neglect was rewritten by the General Assembly effective March 1, 2002, the definition of "record" did not change. *See* Fam. L. § 5–701 (2001 Supp.) (containing both the old and amended versions of the statute).

8. COMAR 07.02.26.11 requires that the local department provide appellants with the redacted record of the investigation not less than fourteen days before the scheduled contested case hearing. *Id.* at (A).

agent participated in the investigation with the Sheriff's Department; that the participation was not truly "joint" because it was limited to the interview process; that, even though the DSS obtained the resulting Sheriff's Office report, the investigating detective's notes of the interview, and Russell's statement, it chose not to obtain the interview tape; ergo, because the audio tape remained in the custody of the Sheriff, it was not part of the DSS records and not subject to mandatory disclosure as part of the redacted administrative record.

Appellee argues, in contrast, that because the DSS and the Sheriff's Department conducted a joint investigation, the records of both agencies were part of the overall record of the investigation. Underlying appellee's argument is the theme that it would be unfair to permit the DSS to pick and choose the aspects of the joint investigation that form the record for purposes of disclosure under COMAR 07.02.26.11.

For the reasons we shall discuss, we agree with appellee and hold that the audio tape of the interview with the DSS and Sheriff's Department investigators should have been provided to both the Office of Administrative Hearings and Russell prior to the administrative hearing.[9]

■ The DSS does not contend that a joint investigation did not occur, as required by statute and the inter-agency agreement. What appellant contends, however, is that the documents and materials generated by the investigation are not in the joint custody of the investigating agencies. As a result, the DSS considered the audio tape to be the property of the Sheriff's Department, over which the DSS had no control.[10]

---

9. Appellant's challenge does not extend to other reports or documents generated by the joint investigation. Hence, we do not offer an opinion as whether such ought to have been provided to the OAH and to appellant.

10. We note that included in the record, from that same interview, were appellee's written statement and the Miranda form signed by him. The Sheriff's Department report and many of the detective's handwritten notes were also made a part of the DSS record and submitted into evidence before the ALJ.

Hence, the DSS posits, it was not required to include that material in the record that it developed. We do not accept that rationale. In our view, the inter-agency agreement, and the practice of joint investigations, creates a partnership between, or among, the agencies, in which each is the agent of the other.

The audio tape was made during a joint interview, in which the DSS investigator actively participated. It falls within the definition of "documentary material," and therefore is part of the "record" as defined by Fam. L. § 5–701(t). Thus, it is a part of the "record" that should have been provided to appellee prior to the contested case hearing.

■ Where the language of a statute differs from relevant language in a departmental regulation, the statutory language must control. *See, e.g., Medstar Health v. Maryland Health Care Comm'n*, 376 Md. 1, 21, 827 A.2d 83 (2003) (Moreover, where "the General Assembly has delegated ... broad power to an administrative agency to adopt [legislative rules] or regulations [in a particular area], this Court has upheld the agency's rule or regulations as long as they did not contradict the language or purpose of the statute." *Christ v. Department of Nat. Res., supra*, 335 Md. 427, 437–38, 644 A.2d 34, 39 (1994); *Lussier v. Maryland Racing Commission*, 343 Md. 681, 689, 684 A.2d 804, 807–808 (1996)). The statute must be read to include the entire record of an investigation, whether normally kept in the physical custody of the DSS or other participating agencies. The narrower COMAR definition of "record" must give way to the broader, more inclusive definition in the statute.

The DSS investigator and Sheriff's Department detective together conducted an investigation of the allegations against Russell. The reports of both agencies, and the notes provided to the ALJ, indicate that their interviews with appellee, the victim, and the other witnesses, were jointly conducted, and that the investigators freely shared information. The relevant joint investigation agreement, signed by the DSS and the Sheriff's Department, describe the relationship as a "team." That information was to be freely shared within the "team" is

apparent. Even if the DSS investigator did not rely on the audio tape in creating her report, as she indicated in an affidavit filed with the circuit court,[11] she had an access to it not enjoyed by appellee.

 Guiding our analysis is a basic principle of administrative law:

[A]dministrative bodies are not ordinarily bound by the strict rules of evidence of a law court. *Hyson v. Montgomery County Council,* 242 Md. 55, 70, 217 A.2d 578, 587 (1966). In that connection, we stated in *American Radio–Telephone Service, Inc. v. Public Service Commission,* 33 Md.App. 423, 434–35, 365 A.2d 314, 320 (1976), "[a]lthough administrative agencies are not bound by the technical common law rules of evidence, they must observe the basic rules of fairness as to the parties appearing before them." *See Dickenson [Dickinson]–Tidewater, Inc. v. Supervisor of Assessments,* 273 Md. 245, 253, 329 A.2d 18, 24 (1974); *Montgomery County v. National Capital Realty,* 267 Md. 364, 376, 297 A.2d 675, 681 (1972); *Dal Maso v. Board of County Commissioners,* 238 Md. 333, 337, 209 A.2d 62, 64 (1965). Procedural due process in administrative law is recognized to be a matter of greater flexibility than that of

---

11. The affidavit also asserted:

When I conduct a joint investigation of child sexual abuse, the assigned law enforcement officer or detective and I maintain separate files. Law enforcement does not share tapes or physical evidence, such as blood or semen samples or clothing, or copies of search warrants. The local department does not share with law enforcement copies of the local department's risk assessment, closing notices, court reports, or CINA documents.

The types of evidence and documents described are very different than an audio taped interview with the alleged abuser. The documents and evidence described in the affidavit are singularly part of the differing purposes of the parties' investigation—the DSS is assigned to investigate child sexual abuse with respect to the victim's well-being. Law enforcement investigates child sexual abuse allegations for purposes of criminal prosecution. Necessarily, each investigation contains information not necessarily relevant to the other. The audio tape of a joint interview of the alleged abuser, containing the most accurate information as to the alleged abuser's statements, is necessary for both investigations and must be part of the joint record.

strictly judicial proceedings. *NLRB v. Prettyman*, 117 F.2d 786, 790 (6th Cir.1941); *Lacomastic Corp. v. Parker*, 54 F.Supp. 138, 141 (D.Md., 1944). The concept of due process requires that we examine "the totality of the procedures afforded rather than the absence or presence of particularized factors." *Boulware v. Battaglia*, 344 F.Supp. [889] at 904.

*Widomski v. Chief of Police of Baltimore County*, 41 Md.App. 361, 378–79, 397 A.2d 222 (1979). The concept that an administrative proceeding must be fundamentally fair to the parties pervades Maryland's administrative law. *See, e.g., Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981); *Rogers v. Radio Shack*, 271 Md. 126, 314 A.2d 113 (1974); *Bernstein v. Bd. of Ed. of Prince George's County*, 245 Md. 464, 226 A.2d 243 (1967); *Prince George's County v. Hartley*, 150 Md.App. 581, 822 A.2d 537 (2003); *Bryant v. Dep't of Public Safety and Correctional Servs.*, 33 Md.App. 357, 365 A.2d 764 (1976).

The audio tape provides the most accurate, contemporaneous record of Russell's statements to the investigators. If the investigators did not rely on the tape to make their reports, it would have been the best source for the preparation of accurate written reports. Likewise, fairness requires that Russell should have the opportunity to use the recording to test the statements and conclusions made by the investigators in their reports, and to test their credibility and recall, if necessary. During the administrative hearing, Russell's counsel demonstrated instances where discrepancies between his testimony and the investigators' statements concerning the interview might easily have been resolved.

### An Analogy: A Criminal Defendant's Statement

Had Russell been charged with crimes as a result of the investigation, the State's Attorney would have been under a duty to disclose the audio tape.[12] Maryland Rule 4–263(b)(2) (2003) provides:

---

12. Appellee claims he requested, through counsel, a copy of the audio tape in question. Appellant does not dispute that contention and,

Statements of the defendant. As to all statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant ... (A) a copy of each written or recorded statement[.]

In *Johnson v. State*, the prosecution did not provide to the defendant, or introduce, his pre-trial statement, but elicited testimony about the statement from a police officer. The Court of Appeals determined:

The State shall not be allowed so disingenuously to circumvent the pre-trial disclosure mandated by Rule 4–263(b)(2)(A) by the device of using a derivative version of Petitioner's statement through [a police officer's] testimony. We hold that, upon request of the defendant, the State must furnish a defendant's apparently available recorded statement made to a State agent, even if the State intends only to use the content of the recorded statement at trial, irrespective of whether the physical recording itself is intended for use as direct evidence at trial. For us to hold otherwise would render Rule 4–263(b)(2)(A) a nullity.

The State's argument that it provided the "substance" of Petitioner's oral statement, pursuant to Rule 4–263(b)(2)(B), does not relieve it of its companion obligation to produce the recorded statement under Rule 4–263(b)(2)(A). Maryland Rule 4–263(b)(2) cannot be parsed as the State wishes. To allow the State to satisfy its discovery obligations under Rule 4–263(b)(2)(B), in lieu of Rule 4–263(b)(2)(A), would grant the State largely unchecked discretion to summarize, edit, or characterize the content of a defendant's recorded statement in any form it chooses. This violates the spirit and letter of discovery of a recorded statement as provided by the rule. When a recorded statement is available, the "substance" of the oral delivery of the statement, as determined by the State, may not substitute for, or even be able to describe, the nuances, qualities, or manner in which the interrogation was conducted. A principal purpose of the

---

although there is no subpoena for the audio tape in the record, we shall assume, *arguendo*, the tape was requested.

rule is to provide "for the discovery of statements which might possibly have been unlawfully obtained." [*State v.*] *Brown,* 327 Md. [81] at 92, 607 A.2d [923] at 928. Mere production of the "substance" of a defendant's recorded statement risks thwarting defense counsel's ability to determine the lawfulness of the interrogation or the evidence that stems from it.

*Johnson v. State,* 360 Md. 250, 267, 757 A.2d 796 (2000) (footnotes omitted). *See also Gray v. State,* 181 Md. 439, 30 A.2d 744 (1943).

The Maryland Rule pertaining to discovery in District Court prosecutions would have permitted appellant to inspect and copy his statement to the investigators. Md. Rule 4–262(a)(2).

This Court noted in *Butler v. State,* 107 Md.App. 345, 360, 667 A.2d 999 (1995), that:

> As we stated in *Aud v. State,* 72 Md.App. 508, 522–23, 531 A.2d 706 (1987) (citing both *Carr* [*v. State,* 284 Md. 455, 397 A.2d 606] (1979) and *Leonard* [*v. State,* 46 Md.App. 631, 421 A.2d 85 (1980)]), *cert. denied,* 311 Md. 557, 536 A.2d 664 (1988):
>
> > Unquestionably, under Maryland law, denying defense counsel a copy of a witness's *written* statement prior to the commencement of cross-examination amounts to a denial to the defendant of due process of law. The error is not cured by allowing the court to review the written statement in order to determine its usefulness, inasmuch as that judgment is for defense counsel to make, not the court. [Citations omitted.]

... Neither we nor the trial judge are in the same position as defense counsel to evaluate the prior statement of a witness for purposes of determining its value for impeachment.... Moreover, we are unable to declare that the denial of access to the [witness's] statement was harmless beyond a reasonable doubt and, therefore, we shall reverse the decision of the trial court and remand this case to that court for a new trial.

*Butler, supra,* concerned the written notes and report relying on those notes of an FBI agent involved in a drug sting. The Court determined that the defendant should have been able to examine both. *Id.* at 356, 360, 667 A.2d 999. Even though *Butler, supra,* concerns the written notes of a witness, the principle remains the same when the document in question is a recorded statement. Both investigators relied on Russell's statements in creating their reports. The audio tape should have been made available, by inclusion in the record, prior to the hearing.

### Relevant Statements Made By or Information About Other Witnesses in Criminal Proceedings

The Court of Appeals and this Court have found that the prosecution must provide a defendant with certain statements made by, or information about, other witnesses in criminal proceedings. In *Conyers v. State,* 367 Md. 571, 790 A.2d 15, *cert. denied,* 537 U.S. 942, 123 S.Ct. 341, 154 L.Ed.2d 249 (2002), a capital murder case, the defendant argued that he was entitled to a new trial because the prosecution had failed to provide impeachment evidence about its key witness. The evidence included information that the witness sought to benefit from testifying against Conyers. The Court of Appeals concluded that the evidence was material and should have been disclosed. *Id.* at 612–13, 790 A.2d 15.

Similarly, this Court determined recently that a defendant should have the benefit of all information available to the prosecution about a State's witnesses, because revelation of such information is the only way to assure thorough and effective cross-examination. *Williams v. State,* 152 Md.App. 200, 228, 831 A.2d 501 (2003).

The DSS investigator relied on statements made by Russell in concluding that he was responsible for indicated sexual abuse. Her notes, although created contemporaneously with the interview, may be self-serving and are not the most reliable record of the content of appellant's statement. The most reliable record is the audio tape, which may provide

sustenance to appellee's position (but just as likely may well bolster the DSS conclusion).

The DSS participated in the creation of the audio tape, even if the tape did not remain in its physical custody. Nothing in the notes made by either the DSS investigator or the detective indicate that they made clear to Russell that the tape would not be reviewed by the DSS investigator, or that it would be retained exclusively for the Sheriff's Department's use. Appellee should have the benefit of challenging the DSS's determination by use of the most reliable, and least self-serving, evidence available from the joint investigation.

2. *Did the circuit court err by ordering the Office of Administrative Hearings to presume, should the audio recording not be produced, that the information on the audio tape was unfavorable to the DSS?* [13]

In its order of remand, the circuit court stated:

On remand, the local department shall obtain a copy of the audio tape from the Sheriff's department and insert the tape as part of the redacted record. In addition, the local department shall provide a copy of the audio tape to counsel for the Appellant. If, on remand, the local department fails to provide Appellant with a copy of the audio tape, then the ALJ shall find that this omission gives rise to the presumption that the audio tape, if produced, would be unfavorable to the local department.

In *Miller v. Montgomery County*, 64 Md.App. 202, 214, 494 A.2d 761, *cert. denied*, 304 Md. 299, 498 A.2d 1185 (1985), Judge Bloom, writing for this Court, explained the consequences of spoliation of evidence:

The destruction or alteration of evidence by a party gives rise to inferences or presumptions unfavorable to the spoliator, the nature of the inference being dependent upon the

---

**13.** We have been advised that the disputed audio tape has been destroyed. We do not know whether the destruction was intentional to avoid disclosure in this case, or whether it was done in the ordinary course of business. The better practice would be to preserve all potential evidence until all proceedings have been concluded.

intent or motivation of the party. Unexplained and intentional destruction of evidence by a litigant gives rise to an inference that the evidence would have been unfavorable to his cause, but would not in itself amount to substantive proof of a fact essential to prove his opponent's case. The maxim, *Omnia praesumuntur contra spoliatem,* "all things are presumed against the spoliator," rests upon a logical proposition that one would ordinarily not destroy evidence favorable to himself.

(citation omitted).

As we later pointed out in *Anderson v. Litzenberg,* 115 Md.App. 549, 694 A.2d 150 (1997)

*Miller* makes clear that two levels of inferences could have been drawn from Bramble's discarding most of the tarp system. If the jury concluded that Bramble's decision to throw away the tarp was merely the product of innocent mistake, the jury could still presume that, at the time of the accident, the tarp was in a defective, or otherwise unfavorable, condition. If, on the other hand, the jury was convinced that Bramble had a fraudulent intent to conceal the nature of the tarp's defective condition, the jury could also infer Bramble's consciousness of the fact that its case was weak. Thus, under *Miller,* an adverse presumption may rise against the spoliator even if there is no evidence of fraudulent intent."

115 Md.App. at 561, 694 A.2d 150.

The circuit court's direction to the ALJ to apply a presumption that the content of the tape would be unfavorable to the DSS is partially legally correct. Because this issue will arise at a subsequent hearing, we offer guidance to the hearing officer.

■ As we read *Miller* and *Anderson,* we conclude that, upon remand, the administrative law judge must make a factual determination regarding the circumstances of destruction of the audio tape. An intentional or willful destruction of the evidence could support a presumption unfavorable to the DSS; however, the mere inability to produce the audio tape

would support an adverse inference rather than a presumption.

We affirm the judgment of the circuit court, and remand this case to the Office of Administrative Hearings for further appropriate proceedings in compliance with this opinion. Because we affirm the order of remand, we need not reach appellant's remaining questions.

**JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY AFFIRMED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLANT.**